JOHN L. WHITE

*v.*

THE PEOPLE *ex rel.* City of Bloomington.

*Filed at Springfield, May* 17, 1880.

1. CONSTITUTIONAL LAW—*taking private property for public use.* The constitutional limitation that private property shall not be taken for public use without just compensation, to be ascertained by jury when not made by the State, has reference only to the exercise of the power of eminent domain, and not to special taxation of contiguous property for the building of a sidewalk or other public improvement by cities, towns and villages.

2. SAME—*special taxation by cities for local improvements.* The general requirement in sec. 1, art. 9, of the present constitution requiring taxation to be by valuation, so that every person and corporation shall pay a tax in proportion to his, her or its property, is modified by sec. 9 of the same article, so that the corporate authorities of cities, towns and villages may make local improvements by special taxation of contiguous property or otherwise, and does not apply in such case.

3. MUNICIPAL CORPORATIONS—*sidewalks by special taxation.* The constitution of 1870 has authorized the legislature to vest the corporate authorities of cities, towns and villages with power to make local improvements by special

assessment, or by special taxation of contiguous property, or otherwise, and this justifies an enactment whereby a town lot may be made chargeable with the entire expense of the construction of a sidewalk in front thereof. There is no limitation in this regard in respect of equality and uniformity, in the constitution of 1870, as in that of 1848.

4. SAME—*special tax for sidewalk may exceed benefits.* Whether or not a special tax on contiguous property in a city or town for a local improvement, as, a sidewalk fronting the same, exceeds the actual benefit to the lots taxed, is not material. It may be supposed to be based on a presumed equivalent, and where the corporate authorities determine the frontage to be the proper measure of probable benefits, this can not be disputed or disproved.

5. A statute investing the corporate authorities of cities, towns and villages with power to tax contiguous property for the expense of constructing sidewalks, leaving it to them as they may think just and equitable to determine whether the former mode by general taxation, or special assessment, shall be pursued, or whether there shall be special taxation of contiguous property, either by a levy on the property of the cost of making the sidewalk in front of it, or by a levy of the tax in proportion to its value, frontage or superficial area, is not unconstitutional, but is a valid law.

6. FORMER DECISIONS. The cases of the *City of Chicago* v. *Larned*, 34 Ill. 203, and the *City of Ottawa* v. *Spencer*, 40 id. 211, holding a special assessment for local improvements on the basis of the frontage of lots on the streets to be improved, were invalid, were made under the peculiar limitations of the constitution of 1848, which are omitted in that of 1870, and hence these cases are no longer authority on the subject.

APPEAL from the County Court of McLean county; the Hon. REUBEN M. BENJAMIN, Judge, presiding.

Messrs. BLOOMFIELD & HUGHES, for the appellant:

The law under which the ordinance was passed is unconstitutional, as taking private property for public use without just compensation. If the assessment is for local improvements it must be limited to the compensation made by benefits. *Gridley* v. *City of Bloomington*, 88 Ill. 557.

There is no greater obligation on the part of lot owners to build sidewalks in front of their property than to pave the street for at least half its width. (*City of Ottawa* v. *Spencer*, 40 Ill. 211.) If, therefore, a property owner can be compelled to pay for a sidewalk in front of his premises, according to frontage, irrespective of benefits, it logically and necessarily

follows that a city may construct valuable and lasting pavements, costing any reasonable amount, suitable to the size of the place and location of the street, and compel abutting property owners to pay therefor according to frontage, without regard to benefits, and the same principle may be applied to the construction of adjacent water works, sewers, viaducts, tunnels, etc., and thus confiscate contiguous property.

Assessments exceeding benefits are void. The true construction of the constitution limits all special assessments to the amount of benefits. Sec. 9, art. 9, of the constitution is not to be considered as a grant of power to the legislature, but only a withdrawal of limitation that all taxation must be uniform as to value, leaving the legislature at liberty to frame laws for assessing, as we think, to the limit of benefits by value, frontage or area or any other fixed standard, but that did not remove the limitation that compensation should be made.

Mr. B. D. Lucas, for the appellee:

Contended that the tax which might be assessed was not limited to benefits (Rev. Stat. 1877, p. 245), and that the act of the legislature is not unconstitutional, in support of which was cited Sec. 9, Art. 9, Const. of 1870; *Chicago R. R. Co.* v. *Smith*, 62 Ill. 268; *People* v. *Wall*, 88 id. 75; *Mason* v. *Wait*, 4 Scam. 127; *People ex rel.* v. *Reynolds*, 5 Gilm. 1; *Bank of the Republic* v. *Hamilton County*, 21 Ill. 61; *People* v. *Worthington*, 21 id. 174; *Firemen's Benevolent Association* v. *Lounsbury*, 21 id. 513; *Pennsylvania Railroad Co.* v. *Smith*, 62 id. 268; *Twitchell* v. *Blodgett*, 13 Mich. 152; Cooley Const. Lim. 8.

The limitation in respect to taking private property for public use has reference solely to the power of eminent domain. *People* v. *Mayor*, 4 Conn. 419; *Allen* v. *Drew*, 44 Vt. 175; *Warren* v. *Henley*, 31 Iowa, 31.

Similar laws have been upheld, and frontage made the sole, absolute and only rule of determining the amount of the

tax. *Warren* v. *Henley*, 31 Iowa, 31 ; *McGonigh* v. *City of Alleghany*, 44 Pa. 118 ; *Strond* v. *City of Philadelphia*, 61 id. 257 ; *Ligler* v. *Fuller*, 34 N. J. 228 ; *Neenan* v. *Smith*, 50 Mo. 526 ; *Parker* v. *Chollis*, 9 Kansas, 160 ; *Allen* v. *Drew*, 44 Vt. 184 ; *Morrison* v. *Hershie*, 32 Iowa, 271 ; *St. Louis* v. *Clement*, 49 Mo. 552 ; *Bradley* v. *McAtee*, 7 Bush, 667 ; *New Albany* v. *Cook*, 29 Ind. 220 ; *Ernst* v. *Kunkle*, 5 Ohio St. 520 ; *Mayor, etc.* v. *Hughes*, 1 Gill and J. 492 ; *Northern Indiana Railroad Co.* v. *Connelly*, 10 Ohio St. 159 ; *City of Covington* v. *Boyl*, 6 Bush, 206.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On March 22, 1878, the city council of Bloomington adopted an ordinance for the building of a sidewalk touching upon the line of the south end of lot 44, in Mason's addition to the city of Bloomington, requiring that it should be paid for by special taxation of the lots touching upon the line of the sidewalk by levying the whole cost thereof upon the lots touching upon the line of the sidewalk in proportion to their frontage upon the sidewalk. That such owners should build the sidewalk as prescribed, within thirty days after the publication of the ordinance, and that in default thereof the street commissioner should construct it and make return to the city clerk of the cost, together with a list of the lots touching upon the sidewalk, their frontage thereon, and the names of the owners,—whereupon the city clerk should proceed to make a tax list against the lots and the owners, ascertaining by computation the amount of special tax to be charged against each of the lots and the owners on account of the construction of the sidewalk, according to the frontage of each lot on the sidewalk; and the city clerk should thereupon issue his warrant to the special collector, who should proceed to collect the amount of the owner of the property, and in case of his failure to collect the amount he should make return to the county collector,

and if not paid to the county collector, he should apply for judgment against the land as in case of other taxes.

John L. White, the owner of said lot 44, having failed to build the sidewalk in front of the premises as ordered, the sidewalk was constructed by the street commissioner at an expense of $11.54, and upon proceeding had in every respect in compliance with the ordinance, White, the owner, refused to pay the tax for the above amount, and application was made by the county collector to the county court for judgment against the land. White, the owner, appeared and filed the following objections to the application :

1. The ordinance is null and void.

2. The law (under which the ordinance was passed) is unconstitutional and void.

3. The assessment exceeds the benefits derived to the lot by said improvement.

4. The property is not specially benefited to the extent of the cost of the improvement.

5. The assessment is void as being made according to frontage.

To each of the objections a demurrer was interposed and sustained by the court, and judgment rendered in favor of the People, from which the objector, the owner of the lot, took this appeal.

The statute under which the ordinance in question was passed, enacts that in addition to the mode now authorized by law, any city or incorporated town or village may, by ordinance, provide for the construction of sidewalks therein, and may, by such ordinance, provide for the payment of the whole or any part of the cost thereof, " by special taxation of the lot, lots or parcels of land touching upon the line where any such sidewalk is ordered, and such special taxation may be either by a levy on any lot of the whole or any part of the cost of making any such sidewalk in front of such lot or parcel of land, or by levying the whole or any part of the cost upon each of the lots or parcels of land touching upon the line of such

sidewalk, *pro rata,* upon each of said lots or parcels, according to their respective values; * * * or the whole or any part of the cost thereof may be levied upon such lots or parcels of land in proportion to their frontage upon such sidewalks, or in proportion to their superficial area, as may be provided by the ordinance ordering the laying down of such sidewalk,"—the statute further providing particularly in detail upon the subject. Laws 1875, p. 63.

No question is made as to the ordinance being in pursuance of the statute, or as to the regularity, under the ordinance, of every step which has been taken in the proceeding. The real questions which are made, are whether the said sidewalk law is constitutional, and if so, whether the tax or assessment that may be levied under it is limited to actual benefits.

In *The City of Chicago* v. *Larned,* 34 Ill. 203, this court decided that an assessment for the grading and paving of a street made on the basis of the frontage of lots upon the street was invalid; and the same was decided in *The City of Ottawa* v. *Spencer,* 40 Ill. 211, with reference to an assessment for building a sidewalk on the basis of the exclusive liability of the owners of the adjacent lots for the cost of the improvement according to the frontage of the lots thereon.

Those decisions were made under the constitution of 1848, and in view of the provisions of sections 2 and 5, article 9 of that constitution, which were as follows:

Section 2 of article 9 of that constitution declared that the General Assembly should provide for levying a tax by valuation, so that every person and corporation should pay a tax in proportion to the value of his or her property.

Section 5 of the same article provided that the corporate authorities of counties, townships, school districts, cities, towns and villages, might be vested with power to assess and collect taxes for corporate purposes,—such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same.

It was held in those cases, that under these provisions of

39—94 Ill.

the constitution of 1848 there did not exist, either in the legislature or in the corporate authorities of cities and towns, a power of apportioning taxes, whether of a general or of a local character, except on the principle of equality and uniformity; that it was manifest that constitution established equality and uniformity to be the principle of taxation throughout the State in all its subdivisions of local government. It was held that the paving of a street or making a sidewalk were not mere local improvements, but were matters of public benefit, extending throughout the chartered limits of the city or town, in which the whole public were interested and should pay a proportion of the expense; and that the only valid mode, under the above constitutional provisions, of making such improvements through the agency of special assessments was to assess each lot the special benefits it would derive from the improvement, charging such benefits upon the lots, and the residue of the cost to be paid by equal and uniform taxation.

The many decisions of courts of other States sustaining statutes authorizing the assessment of the expense of such improvements upon the lots fronting on the improvement, as a proper and constitutional exercise of the taxing power by the legislature, were held not to apply, on the ground that in neither of such States could. there be found the same constitutional provisions as those above cited. It was said that section 5, requiring taxes for corporate purposes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same, was believed to be peculiar to that constitution of 1848, and to be more stringent than any other State constitution on the same subject.

But the questions in the present case arise under our constitution of 1870, which is entirely different upon the point, on which our former decisions cited were made to depend, so that those decisions have little pertinency in the present case.

Section 1 of article 9 of the constitution of 1870 declares that "the General Assembly shall provide such revenue as

may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property."

Section 9 of the same article provides that "the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes,—but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the·same."

Appellant, in claiming that this sidewalk law is unconstitutional, should point out the provision of the constitution that conflicts with the law. The only provision as so doing, to which his counsel have referred, is, " that private property shall not be taken for public use without just compensation,—such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." Section 13, article 2. That limitation, we consider, has reference solely to the exercise of the power of eminent domain. *The People* v. *Mayor, etc.* 4 Comst. 419 ; *Allen* v. *Drew*, 44 Vt. 175; *Warren* v. *Henley*, 31 Iowa, 31.

It is quite clear that the levying such local assessments (for the building of sewers and sidewalks) is not taking private property for public use under the right of eminent domain, but is the exercise of the right of taxation, inherent in every sovereign State. (Per REDFIELD, J., in *Allen* v. *Drew, supra.*)

The courts seem to be very generally agreed, that the authority to require the property specially benefited to bear the expense of local improvement, is a branch of the taxing power, or included within it. 2 Dill. Mun. Corp. § 596. The compensation, under this provision, is to be ascertained by a jury.

As remarked in *The People* v. *Mayor, etc., supra,* " This is an appropriate mode when lands or goods are taken, because

their value is uncertain, but not when money is taken, because its value is already fixed."

Not only is there in the constitution of 1870 the absence of any restriction of the mode of taxation here adopted, but there is express authorization of it in the fullest terms. It is, that the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. We do not see what broader authority than this is needed to justify an enactment whereby a town lot may be chargeable with the expense of the construction of a sidewalk in front of this lot. It is a special tax on property contiguous to the improvement. And the constitution says special taxes may be levied on property contiguous to the improvement. There is no limitation in respect of equality or uniformity, as in the constitution of 1848.

In the next following clause of section nine, "for all other corporate purposes," etc., there is the limitation of uniformity; there, for all other corporate purposes the taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same. Thus drawing a sharp contrast in the two clauses between the making of local improvements and other corporate purposes—the first clause providing for making local improvements by special assessment, or by special taxation of contiguous property, or otherwise, unqualifiedly, without any limitation whatever—the second clause providing for taxation for other corporate purposes, but with the limitation that the taxes for other corporate purposes shall be uniform within the jurisdiction of the municipality. We find the phrase "special taxation" introduced for the first time in the constitution of 1870. There is nothing there defining its meaning. If we may resort to former legislation of the State, as it is used there, for its meaning, we shall find it to embrace the precise kind of tax which is here in question. For instance, the charter

of the city of Alton, Laws 1833, p. 208, sec. 6, contains this provision: "It shall be lawful for the board of trustees to levy and collect a *special tax* on the owners of lots on said street or parts of street, according to their respective fronts, for the purpose of grading and paving the sidewalks in said street." The same provision occurs in various other municipal charters passed prior to the adoption of the constitution of 1870, the assessments authorized by them being denominated in the various acts *special taxes,* and to be levied in proportion to the frontage upon the improvement. Where a sidewalk required to be laid down extends, as in the present case, along the property of but one person, how can the cost be defrayed "by special taxation of contiguous property," otherwise than by imposing the tax for the cost on the property in front of which the sidewalk is made?

The provision that these local improvements may be made by special taxation of contiguous property, but that for all other corporate purposes taxation shall be uniform in respect to persons and property within the jurisdiction of the body imposing the tax, excludes all idea that for the making of such local improvements every person shall pay a tax in proportion to the value of his property, and that general requirement found in section one is modified by section nine, that the corporate authorities of cities, towns and villages may be vested with power to make local improvements by special taxation of contiguous property, or otherwise, and does not apply in such case. The whole constitution must be taken together.

Whether or not the special tax exceeds the actual benefit to the lot is not material. It may be supposed to be based on a presumed equivalent. The city council have determined the frontage to be the proper measure of probable benefits. That is generally considered as a very reasonable measure of benefits in the case of such an improvement, and if it does not in fact, in the present case, represent the actual benefits, it is

enough that the city council have deemed it the proper rule
to apply.

In *Allen* v. *Drew, supra,* in reference to such local improvements and assessments, REDFIELD, J., observes : "They are
each, in degree, a general benefit to the public, and a special
benefit to the local property. * * * * Such assessments
are justified on the ground that the subject of the tax receives
an equivalent. But if the court should hold the assessment
void because they adjudged the equivalent unequal, then no
tax could stand, and government would cease," and see
Cooley on Taxation, 450. And on page 451 of the work last
named, on the same subject, it is said: "In many instances
* * * *   the legislature has deemed it right and proper
to take the line of frontage as the most practicable and
reasonable measure of probable benefits, and making that the
standard, to apportion the benefits accordingly. Such a
measure of apportionment seems at first blush to be perfectly
arbitrary, and likely to operate in some cases with great
injustice, but it can not be denied that, in the case of some
improvements, frontage is a very reasonable measure of benefits, much more just than value could be, and perhaps
approaching equality as nearly as any estimate of benefits
made by the judgment of men. However this may be, the
authorities are well united in the conclusion that frontage
may lawfully be made the basis of apportionment."

And the same author, in his work on Constitutional Limitations, p. 507, remarks: "It has been held equally competent
to make the street a taxing district and assess the expense of
the improvement upon the lots in proportion to the frontage.
Here, also, is apportionment by a rule which approximates to
what is just, but which, like any other rule that can be
applied, is only an approximation to absolute equality. But
if, in the opinion of the legislature, it is the proper rule to
apply to any particular case, the courts must enforce it."

In Dillon on Mun. Corp., sec. 596, it is said: "And the
many cases which have been decided fully establish the gen-

eral proposition that a charter or statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned (sidewalks among them), and to assess the expense upon the property which, in the opinion of the designated tribunal or officers, shall be benefited by the improvement, in proportion to the amount of such benefit, or upon the abutters in proportion to benefits or frontage or superficial contents, is, in the absence of some special constitutional restriction, a valid exercise of the power of taxation. Whether the expense of making such improvements shall be paid out of the general treasury or be assessed upon the property benefited, or legislatively declared to be benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited or alone upon the abutters, according to frontage or according to the area of their lots, is, in all cases, a question of legislative expediency, unless there be some special restraining constitutional provision upon the subject. Whatever limitation there is upon the power of taxation (which includes the power of apportioning taxation) must be found in the nature of the power and in express constitutional provisions." (See cases on the subject in various State courts collected in note.)

And that it is competent for the legislature to require the *abutter to bear the whole expense* of the improvement in front of his property, is laid down in sec. 597 of the same work, and in *Warren* v. *Henley,* 31 Ia. 31, and *Weeks* v. *Milwaukee,* 10 Wis. 258. And Cooley on Taxation, 453, 398, while expressing the contrary opinion in this last particular, with respect to local improvements in general, concedes that in sidewalk cases this latter mode for the construction of them has been held admissible, but that it has been justified as a regulation of police, and is not supported on the taxing power exclusively.

It is only in a special assessment proceeding proper, as known and adopted in this State since the *Larned case,* that

regard is to be had to special benefits and an actual assess-
ment of them alone to be made upon the property, and the
residue of the cost to be paid by general taxation. And the
objection that the special tax here exceeds the benefits to the
lot, implies that the only mode of making the improvement
is by special assessment; whereas, the broad power is given,
under the constitution, to make it either by special assessment,
or by special taxation of contiguous property, or otherwise.
The objection leaves out of view, and treats as meaningless
and of no avail, the words, "by special taxation of contigu-
ous property," and "or otherwise," which have with special
care been inserted in the constitution of 1870. It also disre-
gards that there is no requirement of uniformity of taxation
for local improvements, while there is for other corporate
purposes. This proceeding is in the special taxation of con-
tiguous property; and in the adoption of that mode there is
no requirement of benefits received, and no respect thereto,
further than may be had by the city council in determining
upon which particular one of the several modes of special
taxation of contiguous property open to them shall be resorted
to. The condition is reversed now from what it was at the
time the decision in the *Larned case* was made. It was there
held that the decisions of other State courts on the subject
were inapplicable, because of that peculiar restrictive provi-
sion in our constitution of 1848, before cited; but that re-
striction is left out of the constitution of 1870, and, instead,
there is expressly granted the unrestricted power to cause
these local improvements to be made by special assessment,
or by special taxation of contiguous property, or otherwise.
We may now say that we believe this provision makes our
constitution of 1870 at least as liberal upon this subject as
any other State constitution; and therefore, that the decisions
of other courts of the Union, the great current of which are
in support of the mode of such taxation on the basis of front-
age, apply now with full force.

After the interpretation of the constitution of 1848 in the *Larned case*, the constitution was radically changed in the particular here involved, for the very purpose, we may suppose, of avoiding inconveniences which had been found to result from that decision.

The system of special assessments proper might answer in some of the large cities, where it would not suit smaller towns. It might be too cumbersome and expensive for the latter. To have the formal procedure of a special assessment proceeding as known to our law gone through with, and a question of benefits be liable to be submitted to the decision of a jury every time a piece of sidewalk was there to be laid down, would involve a labor, delay and expense which might be oppressively felt. Common experience and judgment teach us that sidewalks are a special benefit to the contiguous property, and it has ever, very generally, been considered as just and equitable that such property should pay the expense of them.

The framers of the constitution of 1870 thought it proper that the General Assembly should not be hampered in this respect, as they before had been, and so left out the former restrictive provision of uniformity in all municipal taxation, and adopted the broad provision that the General Assembly might vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. Thus, prescribing no rule whatever upon the subject, but placing the matter wholly under the control of the General Assembly, that that body might, from time to time, enact such laws upon the subject as the interest of towns and cities throughout the State might require. The General Assembly have accordingly, by this sidewalk law, invested cities, towns and villages with power to tax contiguous property for the expense of constructing sidewalks, and have left it with them to determine, as they may think it just and equitable in the circumstances of any particular case, whether the former mode,

by general taxation or by special assessment, should be pursued; or whether there should be special taxation of the contiguous property, either by a levy on the property of the cost of making the sidewalk in front of it, or by a levy of the tax in proportion to value, frontage or superficial area.

The grant of power by the General Assembly is explicit for pursuing the mode which has been adopted in the present case. The only inquiry, then, must be, whether there is any constitutional prohibition of the grant of the power. We find none.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE WALKER, dissenting:

I am unable to concur in the conclusion announced by the majority of the court in this case, and shall give à few of the reasons which induce me to dissent.

To my mind, there is no proposition that is plainer than that, in organizing our State government, in the exercise of the taxing power it was intended to limit it, under all circumstances, at all times and for all purposes, to valuation and uniformity in its imposition and collection. That this was the principle adopted and intended to be enforced, is, I think, manifest from the various provisions of the ninth article of our constitution. The first section of that article specifies two classes of taxes—one levied on property and required to be determined by valuation, so that each person or corporation shall pay taxes in proportion to the value of his, her or its property; the other is authorized to be imposed on specified persons, callings or business, to be uniform as to each class, and to be imposed by general law. All other kinds of taxes for State purposes are required to be imposed in such a manner as to conform to and be consistent with the princi-

ples of taxation fixed in that instrument. Thus, we see the power in raising State revenue is expressly limited, when imposed on property by valuation, on persons, callings or business, by uniformity; and when on other objects and subjects not enumerated, the second section requires it to be in conformity to the same principles. These provisions render it absolutely indispensable that uniformity and equality of burthen shall be observed in such cases.

To enforce these principles beyond all possibility of doubt, the 6th section provides that "the General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatever,"—thus, as far as language can express the intention, prohibiting any other than uniformity to be adopted. This is manifestly true of taxes levied for State purposes.

The 9th and 10th sections of article 9 require, in express language, that in levying taxes for municipal purposes they shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same. This principle is announced most emphatically with reference to these taxes. The constitution, then, imposes these terms and conditions in express language upon all but special taxes on contiguous property to make local improvements. The same rules were always required in making special assessments, and had become a fixed rule of our courts long before the adoption of the constitution, and the term special assessments must have been used by the framers of that instrument as it had been defined by the courts. Uniformity and valuation, then, being the rule, how can it be reasonably supposed that there could have been an intention to depart from it in levying special taxes?

Under the constitution, in all other places, and for all other purposes, the word tax implies a sum of money levied

for public use, on valuation or uniformity, and how can we presume, in this single instance, it was intended to be used in a different sense?

The same reasons apply for guarding the rights of the citizen from oppression and wrong, in levying a special tax for this purpose, as in levying a State or a municipal tax. Why should the owner of property adjacent to the improvement be left to the imposition of an arbitrary burthen for the benefit of the public, whilst property of all other citizens is protected? Shall he be liable to be despoiled of his property, or subjected to great if not ruinous burthens, simply because the constitutional convention failed—it may be, through inadvertence—to add at the end of the clause, "but such taxes shall be uniform in respect to persons and property?" It is sufficient that the rule was not dispensed with in terms, or by clear implication. Shall we, even if it can be said this clause is doubtful, construe it most unfavorably to the protection of the rights of the citizen, when the improvement is made for the benefit of the public? Shall we say that he may have such burthens imposed when all others are protected in their rights?

We should not adopt a construction that must work injustice, unless the language manifestly requires it, in the enforcement of a provision of the constitution or a statute. The more benign and just interpretation should always prevail. This is a rule that has always obtained, and was adopted to prevent injustice, wrong and oppression. And I think that this provision should be construed in harmony with the other provisions of the constitution. I can see no reason why it should not, as the language or justice do not demand it.

The power to levy and expend taxes is liable to more and greater abuse than any other. Hence the effort by the convention to bring it within such rules and principles as would prevent unjust oppression. And in all cases but a special tax

for a local improvement, they seem to have succeeded, as far as human agency is capable of accomplishing such a purpose.

Can we suppose the framers of the constitution intended to limit the General Assembly and corporate powers to the rule of uniformity, and leave the authorities of cities, towns and villages without any control but their will? Why distrust the General Assembly and the corporate authorities of municipalities, and compel them to act within prescribed limits, and leave the officers of cities, towns and villages with uncontrolled power in levying special taxes? I can see no reason why they should be trusted with unrestricted power in this, and compelled to observe rules of uniformity in levying taxes for other purposes. I am unable to comprehend why the word tax, when qualified by the word special, should have attached to it a different operation, or imply a different mode of levy from the term as defined by the framers of the fundamental law. In all other cases the term tax is used in the sense of uniformity or of valuation. And every reason requires that the same rule should apply to a special tax, and I can conceive none that is opposed to it. I am, therefore, clearly of opinion that no well founded distinction can or should be taken.

If the General Assembly may authorize the construction of sidewalks in this mode, the grading and paving of streets in cities and villages and the construction of roads and bridges in incorporated townships may be so authorized. And who will say they may not authorize the erection of engine houses, town halls, and all other local improvements in the same manner. They are all local improvements, and no more for public use than sidewalks.

And if these improvements may be made in this manner, all can see that in many instances it would operate to confiscate the property of the unfortunate owner, if it happened to be adjacent to the local improvement. Suppose such authority conferred, and an ordinance passed to grade a street requiring deep cuts and heavy fills, and expensive protection walls, and

to be paved with stone or wooden blocks, and the ordinance imposed the whole cost on the adjacent property,—or suppose in an incorporated township an ordinance should, under such authority, require a road or all of the roads to be graded, bridged and McAdamized, and the cost should be imposed on the adjacent lands,—do not all see that this would be ruinous to the unfortunate owners of the farms?

Even as the law now stands, there is no limit as to the character of materials to be used, or of the cost of the construction of the improvement. If the lot is of little value, of considerable frontage, and the structure is to be of the most costly character of curbing and of dressed flag-stones, any one can see that the improvement may equal or even exceed the value of the lot, especially if not in the highly improved portion of the city or village. Or suppose, under the law, a farmer whose quarter-section adjoins a highway on two sides should be required to construct an expensive sidewalk along his entire frontage, does not every one see that the construction of a mile of such sidewalk would be highly oppressive? But it may be answered that a sense of justice would restrain the authorities from perpetrating such flagrant wrongs. The convention in its wisdom were unwilling to trust to their sense of right in the imposition of all other corporate burthens, and even limited and controled the power of the General Assembly in the imposition of taxes. When it is learned that these desirable but expensive public improvements may be made at the expense of the few, and the great body of tax-payers escape, we may well fear that the power will be increased and its exercise will be greatly abused.

Again, the authorities are empowered by this act to recover the cost by an action of debt against the adjacent property holders, thus enabling the authorities of these bodies, if the property will not pay the cost, to collect the balance from other property. If the law is sustained I fear that but a portion of the great evils the framers of the constitution

intended to avert will continue unrestrained. The tendency of government is to the abuse of power, and hence the necessity that is constantly pressing for new constitutional limitations and restrictions upon its exercise.

The provision authorizing the apportionment of the cost on adjacent property in proportion to the superficial area of lots or lands, ignores every principle of equality and uniformity of burthen. Suppose two persons own adjoining lots, each of equal frontage, but one double the depth of the other, is there any justice in saying the lot of double the depth shall pay double the amount of the other towards the structure? It may possibly be that the larger lot is worth double that of the smaller, but the chances are greatly in favor of the contrary. It may be worth no more than the other. The question of value does not necessarily depend on mere quantity, but a great number of other circumstances must be considered to determine it.

If it be asked how this special tax on adjacent property can be levied in any other mode, it may be answered that local or special districts or divisions may be formed and the tax assessed at a uniform rate on all the property in the division. There is no practical difficulty in requiring a sidewalk to be laid on both or either side of the entire length of a street, or even on a square, or either or both sides of the street, and to assess a tax to pay the cost of the structure on the adjacent property in the entire division. Suppose it is determined to lay a sidewalk on one side of an entire street, or in front of one or more squares in the street, should not all the adjacent property be taxed in proportion to its value to produce a fund to pay the cost? Could an ordinance in such a case be sustained which should specifically charge the entire cost of the walk in front of each lot upon it? The improvement in such a case is entire in its nature, and the fund should be on all the property for its payment, and raised on the principle of valuation and uniformity.

If it be asked why the words "or otherwise" were inserted at the end of the clause, I will say the previous portion of the clause had named two modes of making such improvements: one by special assessment, and the other by a special tax on adjacent property. These words were, therefore, inserted to exclude a conclusion that these were intended to be the only modes. It was manifestly to permit these bodies to make such improvements with unappropriated means in the treasury, by a tax general within the limits of the corporate body, or with money received on the commutation for road labor, and by any other practicable means authorized by law. This, to my mind, is the reason, and the only reason, for inserting these words.

Other portions of the act, I think, are obnoxious to constitutional objections, but not being presented by this record, I shall not stop to discuss them. In my judgment the portion of the statute which authorizes this proceeding is manifestly unconstitutional and void.

SCHOLFIELD and MULKEY, JJ.: We also dissent from the views of the majority of the court, and concur in the foregoing.