## THE VILLAGE OF BRACEVILLE

### v.

### WILLIAM DOHERTY.

*Municipal Corporations—Licenses—Regulations in Restraint of Trade —Monopolies—Discrimination between Residents and Non-Residents— Peddlers.*

1. An ordinance imposing a license fee upon non-resident peddlers only, is unreasonable, against public policy and in conflict with the Constitution and laws of this State, and, therefore, void.

2. A subsequent act which is general, does not abrogate a former act which is particular.

3. Where the right of a municipal corporation to pass a particular ordinance is questioned, the burden is upon it to show authority for so doing.

[Opinion filed May 25, 1889.]

APPEAL from the Circuit Court of Grundy County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. S. C. STOUGH and T. F. CLOVER, for appellant.

Can a judgment against appellant be sustained because the village, in the first section of one of its ordinances has given, in the opinion of the court, an unwarrantable definition of the word " peddler?" Even if this section of the ordinance entitled "Peddlers," in its exposition of that term is unreasonable and void because of its attempted discrimination between resident and non-resident persons, still the balance of the ordinance ought not to be invalidated by its infirmity. An ordinance may be void in part and valid in part. Bishop on Statutory Crimes, Sec. 26; Kettering v. The City of Jacksonville, 50 Ill. 39; Harbaugh v. The City of Monmouth, 74 Ill. 367.

Under this rule Sec. 2 of that ordinance, which provides that " It shall be unlawful for any such peddler to exercise his calling within the village without first having obtained a

license to do so," is free from the objection alleged against Sec. 1, and no reason is perceived why it, in connection with Sec. 12 of the ordinance entitled "Ordinances," which declares that a penalty of not less than $3 nor more than $100 shall be adjudged against a person guilty of a breach of any ordinance to which no special fine or penalty is attached.

The only result of holding Section 1 invalid would be to remit to the court the power and duty of determining for itself who "should be deemed a peddler," and what should constitute peddling.

But even if the ordinances so far noticed were insufficient to command a judgment of guilty against appellee, the by-law entitled, "Licenses," which was offered in evidence, is sufficiently broad and comprehensive to embrace the case at bar. Section 5 provides that, "It shall be unlawful for any person to exercise or carry on, directly or indirectly, within the limits of the village of Braceville, the trade, business, occupation or employment  *  *  *  " of peddlers and hawkers "without first procuring a license therefor."

Section 7 provides that "Any person violating any of the provisions, sections or clauses of this chapter shall be liable to a penalty of not less than three dollars nor more than one hundred dollars." This ordinance is a complete by-law against peddling within the village without a license, and subjects the violator of it to a penalty of not less than three dollars nor more than one hundred dollars. In the light of this ordinance the judgment of the court against appellant was manifestly erroneous, unless, indeed, it was permissible for the defendant to assail it with the objection of practical indiscrimination by proving, as was done against the objection of appellant, that there was a manufacturer within the village who hauled his pop about the town and sold it without paying any license. We can not perceive by what authority of law this ordinance can be rendered void by proof of an omission to enforce it in all cases. If the failure to enforce the law in one instance will excuse its enforcement in another, then every law upon the statute book is liable to abrogation. Proof of the non-prosecution of one offender ought not to

warrant the acquittal and discharge of another. The admission of this testimony against the objection of appellant was, in our opinion, error. The case of the resident manufacturer is quite different from the one at bar, and regarding this testimony irrelevant and incompetent as we did, and this manufacturer (and he is nothing more) not being on trial, appellant's counsel refrained from going into that question, and produced no evidence respecting his business.

In all respects, except only as to the offense charged, the case of Harbaugh v. The City of Monmouth, 74 Ill. *supra,* is similar to the one at bar. In that case the defendant was charged, in a complaint, with having sold liquor within the corporate limits of the city, contrary to the ordinances. The case was tried before a magistrate and the defendant adjudged guilty, from which judgment he appealed to the Circuit Court, where, upon the trial, the court was asked to give the following instructions:

"The court instructs the jury that it is incumbent upon the plaintiff to prove the material facts as charged in the complaint, and if the jury believe that the complaint has not been proved as charged, they will find defendant not guilty." The instruction was refused, and our Supreme Court, in speaking of it, say: "On the trial of the cause in the Circuit Court it was the duty of the court to have the cause tried on its merits without regard to the complaint. It was a matter of no moment whether the complaint was technically correct or not; the real question before the jury was, whether there had been a sale by defendant, without regard to whether the evidence corresponded with the complaint or not. This was the real question for the jury, and no error was made in refusing the instruction." These remarks are so pertinent to the case at bar that no comment can make them plainer.

The central idea of revenue can not fairly and justly be applied to the resident and non-resident peddler. The difference in residence produces inequality in the tax. The resident peddler contributes to the expense of the municipal government, while the non-resident peddler pays nothing. The goods and factory of one bear their proportion of taxa-

tion, while the goods and factory of the other are entirely exempt. Where one aids in the establishment and maintenance of public schools, streets and markets, and assists generally in the building up and making of a city, is that ordinance which requires of a non-resident a license fee for the privilege of enjoying the market thus created unreasonable because the same fee is not exacted of the resident citizen? Is it not rather a just, instead of an unjust, discrimination? Where one creates a market at his own expense for the sale of his goods, would it be fair or just to invite foreigners and non-residents to enjoy its benefits upon an equal footing with him? The one who creates a market and pays for it should be permitted to sell his goods therein without taxation; but the person who has not assisted in establishing the market, in reason and justice, has no such claim. We understand there is no constitutional or statutory prohibition against an ordinance like this, but that its validity is to be determined upon a consideration of whether it is just and reasonable.

Messrs. WILLIAM MOONEY and A. R. JORDAN, for appellee.

UPTON, J. This proceeding was commenced before a justice of the peace, upon complaint in writing made upon oath, on which a warrant was issued, appellee arrested and held to bail, and upon the hearing, found guilty. A fine was assessed of three dollars against him, with costs, from which an appeal was taken to the Circuit Court, where it was heard by the court—a jury being waived—and a judgment was then rendered in favor of appellee, and against appellant for costs, from which an appeal was taken to this court.

The complaint upon which the warrant for appellee's arrest was based, was the alleged violation of section one of an ordinance of the village of Braceville, entitled "Peddlers," which section reads as follows:

"Sec. 1. That every non-resident person who shall sell, or offer to sell, any goods, wares, or merchandise or other articles of value, or barter or exchange, at any place in or along or through any of the streets, avenues, alleys, or other

public places, or the private houses of the village, shall be deemed a peddler."

The second section of the same ordinance further provided:

"Sec. 2. It shall be unlawful for any *such* peddler to exercise his calling within the village without first having obtained a license so to do." And by

"Sec. 3. The president is hereby authorized to grant *such* peddler's license, to any person in his discretion, who may apply therefor, upon his paying to the village clerk such amount, for such time as may be agreed upon, according to the scale of fees set forth in the chapter on licenses."

By Sec. 12 of chapter entitled "Ordinances," it was provided: "Whenever, in any ordinance, the doing of any act, or the omission to do any act or duty, is declared to be a breach thereof, and there shall be no fine or penalty declared for such breach, any person who shall be convicted of any such breach, shall be adjudged to pay a fine of not less than $3 nor more than $100."

The scale of fees which is to be paid by non-resident peddlers, as stated in the last clause of Sec. 2 of the above recited ordinance, entitled "Peddlers," will be found in Sec. 6, entitled "Licenses," and is as follows:

"Sec. 6. When a license shall be granted to any person for the purpose of promoting the doing of any of the things mentioned in this chapter, the fee to be paid into the village treasury shall be according to the following schedule of license fees: * * * Peddlers and hawkers, $2 per day, $7 per week."

The appellee is a manufacturer of pop, ginger ale and soda water in Braidwood, Will county, Illinois, and a non-resident of the village of Braceville.

For some months prior to the commencement of these proceedings, appellee had frequently contravened the provisions of the above recited ordinance, by peddling his pop, ginger ale and soda water within the corporate limits of Braceville, without license, or the payment, or offer to pay, the license fees required of peddlers thereby. The appellant municipality of Braceville is a village in Grundy county, Illi-

nois, and, as we understand from the record before us, was duly organized under and pursuant to the provisions of Chap. 24 of the Revised Statutes of this State, title " Cities, Villages and Towns."

It is conceded that the appellant municipality, under the Constitution and laws of this State, had the general power to license, tax and regulate, prohibit and suppress hawkers and peddlers, within its jurisdiction; but the contention of the appellee is, that the ordinance here in question is invalid and void, for the alleged reason that it is unreasonable, and against public policy and the Constitution and laws of this State; makes unjust discriminations against the citizens of the State, and against non-resident citizens of the village of Braceville.

This claimed legal result, while not in terms conceded by appellant's counsel, is sought to be avoided by " conceding for argument, that" Sec. 1, of the foregoing recited ordinance entitled " Peddlers," is void for discrimination, etc., as claimed; still it is insisted the Circuit Court erred in giving judgment for the appellee, for the alleged reason that Sec. 2 of the same ordinance, entitled "Peddlers," together with Sec. 12 of ordinances entitled " Ordinance," were valid and free from objection, and that, under the evidence in the case, entitled appellant to judgment, etc.

We can not yield our assent to that proposition. Sec. 1, relating to peddlers, defines and expressly declares *who* shall be deemed peddlers, under the ordinances and by-laws of the village of Braceville. Who are they?

Every *non-resident person, who shall sell, or offer to sell, any goods, wares, merchandise, or other article of value, within the corporate limits of that village,* is the certain and unmistakable answer in the language of the section quoted. Without Sec. 1 (or if void, and without full force and effect being given to the discriminating clause thereof) Sec. 2 could have no force and effect. It provides: " It shall be unlawful for any such peddler " to exercise his calling within the village, without having obtained a license, etc. What peddlers are here referred to? Manifestly those and those only, who had been before mentioned in Sec. 1, and defined as non-residents of the appellant village.

It is further suggested, in argument, that even if the entire ordinance relating to and entitled "Peddlers" should be held unavailing, still Sec. 5 of the ordinance of the village, entitled "Licenses," is sufficiently comprehensive to embrace the case at bar and entitle appellant to judgment.

The record before us discloses that the several ordinances above referred to under the titles "Licenses," "Peddlers" and "Ordinances" were but parts of a series of "by-laws," passed and in force at the same time, for the general government and especial regulation of the village, and as such should be construed together as *in pari materia.* In that view the special ordinance relating to "peddlers" might be regarded as a special enactment, controlling the general ordinance relating to "licenses" so far as the same relate to the same subject, and therefore the term "peddlers," as used in the fifth section of the chapter, title "Licenses," would be held to refer only to such persons as were defined "peddlers" in the special ordinance upon that subject, viz., non-residents of the village. This by-law under consideration must, as all will concede, be governed by the same canon of construction as are all other legislative enactments, viz., the legislative intent.

It is a fundamental principle that a general enactment does not operate as a repeal of a special law on the same subject, although enacted at the same session. So a subsequent statute which is general does not abrogate a former statute which is particular. Ottawa v. County of La Salle, 12 Ill. 340, and cases cited.

It is wholly immaterial, therefore, which of the ordinances in question had priority in point of time, as both were in full force at the time of the grievance complained of; and it is these ordinances as a whole which we are called upon to construe.

Further, to determine legislative intent, it may be observed that the last clause of the fifth section of the ordinance entitled "Licenses" clearly implies that the term "peddlers," as used therein, should be understood with reference to Sec. 1 of the ordinance, title "Peddlers," for it will be seen that in said Sec. 5 the same discrimination against non-resident per-

sons is kept in full effect by especially declaring, at the close of said section, that "This chapter ('Licenses') shall not be construed to include any entertainment made or had by any citizen of this [appellant] village.".

But more, even, than this, if possible, is the fact (as the evidence in this case shows), the construction placed upon the by-laws by the village of Braceville, in whole and in part, and the authorities and officers thereof, unmistakably establishes that the true construction, intent and purpose thereof was and is to exclude non-residents of the said village from the enjoyment or exercise of the business of a peddler without the payment of a license fee therefor. It is in evidence that, during the same time that appellee was committing the alleged violation of its ordinances in that regard, a resident of the said village was, unmolested and unrestrained, in pursuit of the same business in the same village.

We are satisfied, therefore, that appellant's construction in this regard can not be sustained.

It follows, therefore, that under the before recited provisions of the ordinances of the appellant municipality this prosecution was commenced, and upon their legality appellee's liability in this proceeding must depend.

The principle involved in the case at bar is of general interest, and is deemed of sufficient importance practically to warrant a brief review of the law governing this contention, as we understand it to be.

Judge Dillon, in his valuable and exhaustive treatise on Municipal Corporations, Vol. 1, Sec. 253, after stating the rule in England, says:

"In this country, also, the courts have often affirmed the general incidental power of municipal corporations to make ordinances, but have always declared that ordinances passed in virtue of that power, must be reasonably consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the State." Such ordinances must be reasonable and not oppressive, or repugnant to fundamental rights, or courts will declare them void. Ordinances must be impartial, fair and general. It would be

unreasonable and unjust to make, under similar circumstances, an act done by one person penal, and if done by another not so. Ordinances which have this effect can not be sustained. Special and unwarranted discrimination, or unjust or oppressive interference in particular cases is not to be allowed. The powers vested in municipal corporations, should, so far as practicable, be exercised by ordinances general in their nature and impartial in their operation.

Ordinances of municipal corporations may regulate, but can not restrain trade, or contravene a common right. Dillon on Mun. Cor., Vol. 1, Secs. 253 to 260 and notes and cases cited.

In the valuable treatise of Horr and Bemis on Municipal Ordinances, 137, it is said, after collating a great number of cases: "Municipalities are not in a legal sense corporations; they are not vested with power of local legislation in order that they may arrogate to their own inhabitants additional rights and privileges to those enjoyed by other citizens of the State or Nation; neither can rights be denied to its citizens, and still be allowed to be exercised by non-residents who may come within the corporate limits. Discrimination against residents is equally odious to discrimination in their favor.

"A grant of exceptional immunities to non-residents might, it is true, be of some advantage to the municipality by attracting trade thereto, but the furtherance of the financial interests of its people is not one of the legitimate objects of municipal corporate organization. So non-resident peddlers and sales agents can not be restricted to any further extent than residents."

Judge Cooley, in his exhaustive treatise on Constitutional Limitations, says, Sec. 390: "A statute would not be constitutional which should proscribe a class, or party, for opinion's sake, or which should select particular individuals from a class or locality, and subject then to particular rules, or impose upon them special burdens or obligations from which others are exempt."

In Braum v. City of Chicago, 110 Ill. 187, it was held, that "a license fee imposed by a city or village in pursuance

of power conferred for that purpose, upon certain trades, busi-
ness, or occupation carried on or conducted within its corpo-
rate limits, is not a tax, within the constitutional sense of that
term, but if it were to be so regarded, such license would not
violate any provision of law, so long as such license fees were
uniform, as to all persons of the same class, within the limits
of the city enacting such ordinance.   *   *   *   The 9th sec-
tion of article 9 of the. Constitution of the State provides
that the Legislature may authorize the corporate authorities
of municipalities to levy taxes for corporate purposes, and
this is the source of their power to impose such taxes."

" But the power of the Legislature under the Constitution,
and the corporate body, is limited to uniformity, as to persons
and property within the corporate limits of such bodies; any
attempt by either to depart from uniformity as to persons or
property is prohibited, and such effort would be void."

In East St. Louis v. Wehrung, 46 Ill. 392, which was a
prosecution under an ordinance for keeping a dram shop and
selling intoxicating liquors without a license, it was said:

" It is urged for the defendant, that the ordinance ·
sought to be enforced, is void, because the Constitution
requires taxes imposed by municipal corporations to be uni-
form, in respect to persons and property, within their juris-
diction, and the ordinance in question imposes a differential
license according to the street on which the dram shop is
located.

" The sufficient answer to this is, a license is not a tax, in
the constitutional sense of that term.

" The second section of the ninth article of the Constitution
(1848), after providing for uniformity of taxation proceeds:
' but the General Assembly shall have the power to tax ped-
dlers,' etc., etc., 'in such manner as they shall from time to
time direct.' The same provision is incorporated into the
Constitution of 1870.

" This power the Legislature can delegate to municipal
authorities. If the latter were to attempt to use the discre-
tion thus confided to them in a way of favoritism between
individuals, by imposing a higher license on one person than

upon another exercising the same calling, under the same circumstances and with equal facilities for profit, it might be urged with great force that such action was an abuse of their discretion and could not be sustained. But an ordinance which merely discriminates between different localities in a city, according to the advantages they may present for the business for which such license is sought, leaving all persons at equal liberty, * * * and making no distinction between persons but between places only, is open to no objection."

It will be observed that the above adjudication was in 1868, and, hence, was in view of the Constitution of 1848; but it is believed that, so far as the question of uniformity is involved, the only material difference between the Constitution of 1848 and that of 1870 is in regard to local improvements made or to be made in cities and villages, which is found in Sec. 9 of Art. 9 of Constitution of 1870, and is as follows: "Sec. 9. * * * The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, or by special taxation of contiguous property, or otherwise. For all other corporate purposes all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

In White v. The People, 94 Ill. 604, in construing the clause in question contained in the Constitution of 1870, it is said: "It was held in those cases—referring to the City of Chicago v. Larned, 34 Ill. 203, and the City of Ottawa v. Spencer, 40 Ill. 211—that under the provisions of the Constitution of 1848 there did not exist, either in the Legislature or in the corporate authorities of cities and towns, a power of apportioning taxes, whether of a general or of a local character, except on the principle of equality and uniformity. That it was manifest that the Constitution (of 1848) established equality and uniformity to be the principle of taxation throughout the State, in all its subdivisions of local government. It was held that the paving of a street or making a sidewalk were not mere local improvements, but were matters of public benefit,

extending throughout the chartered limits of the city or town, in which the whole public were interested and should pay a portion of the expenses, and that the only valid mode, under the above Constitutional provisions, of making such improvements through the agency of special assessments was to assess each lot the special benefits it would derive from the improvement, charging such benefits upon the lots, and the residue of the cost to be paid by equal and uniform taxation."

But this was changed by the 'Constitution of 1870, in the particular method of making local improvements in cities, towns or villages, by Sec. 9, Art. 9, Constitution 1870, as before stated, in which special class of cases uniformity and equality is not required, as was held in White v. The People, *supra*, by a divided court. The case of Zanone v. Mound City, 103 Ill. 552, was an original application against the authorities of Mound City to compel them to grant a license to keep a dram-shop within the corporate limits of that city, which was incorporated under the general act of 1872, Chap. 24, R. S. 1874, title, "Cities, Villages and Towns."

Prior to the prosecution in the case cited the city council had passed a general ordinance providing for issue of license to keep dram-shops within that city upon certain conditions set out in the ordinance. The petitioner applied for a license to keep a dram-shop, having complied with the conditions of the ordinance, which application was refused, although it appeared in evidence that license, under the ordinance, had been granted to others for that purpose. It was claimed by the petitioner that such refusal, under such circumstances, was an unlawful and arbitrary discrimination on the part of the authorities of said city against the petitioner. The court said:

" It is claimed by counsel for the city that the city council, as a matter of law, had the right to exercise this arbitrary discrimination in the matter of granting licenses. No authority has been cited which sustains this position, and we have found none.

" To so hold would be a departure from some important fundamental principles which underlie municipal government,

as framed under the Constitution and laws. Municipal corpo-
rations are mere creations of the legislative will, and can
exercise no powers except those by the State conferred upon
them. All the powers they possess are held by them in trust
for the people of the municipality and for the public
generally. Their governmental and administrative powers
* * * can only be exercised by appropriate ordinances.
Such ordinances must be general in their character, and
operate equally upon all persons within the municipality of
that class to which the ordinance relates. Such ordinances
must not be in violation of law, contrary to public policy or
unnecessarily oppressive, and must not arbitrarily discriminate
between citizens of the same class."

In City of Chicago v. Rumpff, which was an action for
an alleged violation of an ordinance concerning slaughtering
within the corporate limits of the city, in speaking of the
question now before us, the court say : " It is believed that
the result of the authorities warrants the assertion that corpo-
rate franchises, whether municipal or private, are conferred in
trust for the benefit of the entire body of corporators, and
must, like all other trusts, be exercised with prudence and
discretion. Hence their by-laws must be reasonable, and such
as are vexatious, unequal or oppressive, or are manifestly
injurious to the interests of the corporation, are void. And
of the same character are all by-laws in restraint of trade, or
which necessarily tend to create a monopoly. All by-laws
should be general in their operation, and bear equally upon all
of the inhabitants of the municipality. When privileges are
granted by an ordinance, they should be open to the enjoyment
of all, upon the same terms and conditions." (45 Ill. 97.)

In Ex parte Frank, 52 Cal. 606, which was a prosecution
under the ordinance of the city of San Francisco against the
relator for a violation of an ordinance of the city known as
the "sample ordinance," which provided, in effect, that any
person who, in the city of San Francisco, shall sell, contract
to sell, or cause to be sold, or solicit for sale or purchase any
goods, wares, merchandise, distilled liquors, drugs or medi-
cines, jewelry, or wares of precious metals, or stones, or any

other property, except wool and domestic products, without at the time having the goods at or in the said city or county, or *in transitu* to the city or county, shall pay a license, etc., etc. After referring to the grant of power to the municipality to pass ordinances regulating trade, etc., the court proceeds:

"But conceding that the city is authorized to license callings or business for the purpose of revenue, the rule is, that an ordinance passed under general power (as the public good may require), must be, first, reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the State; second, it must not be oppressive; third, it must be impartial, fair and general in its application; fourth, it may regulate, but it must not restrain, trade."

In Tennessee, in the case of The Mayor v. Althorp, 5 Cald. 554, in which case the defendant was arrested for the violation of an ordinance of the city of Nashville, which precluded non-residents of the State from selling goods, wares and merchandise in said city without procuring a license, etc., the court, after stating the constitutional provisions, the charter of the city, the ordinance under which proceedings were instituted, say: "Conceding the authority of the city reasonably to tax commercial privileges within its corporate limits, * * * still, the authority can not enable the city to create privileges, for the purpose of taxing them, or to discriminate between persons exercising the same privileges by imposing a tax upon one class at a higher rate or in a different mode or upon other principles than are applied to the exercise of the same privileges by others. The power to tax privileges goes no farther than the delegation in its charter, and any attempt to impose other or heavier burdens upon a portion of those exercising the same privileges than are imposed upon the others would be void, as an exercise of partial legislation, etc., etc.

"The defendant (non-resident) is liable to be taxed as all others are taxed for the exercise of the same privileges, and no more; and any attempt to discriminate between different classes of merchants in the mode of taxation is beyond the

power of the city and void. The objection to the second section of the ordinance is more obvious and insurmountable, if possible, than those already spoken of. This section discriminates, in express terms, between manufacturers and dealers residing without the limits of the city of Nashville and members of the same class residing within the city, and assumes to lay down a rule for the former class.

"This certainly can not be done, and would be equally beyond the authority of the State or the municipality to enact."

So in Missouri, in the case of The City of St. Louis v. Weber, 44 Mo. 547, which was a prosecution under an ordinance of the city regulating the sale of meat, it was held that corporations have none of the elements of sovereignty, and can not go beyond the powers granted them, and that they must exercise such granted powers in a reasonable manner; that the court must judge in each case, whether the exercise of the power be reasonable.

" That if the ordinance was oppressive, unequal and unjust, if it was not a legitimate regulation of the vending of meat, but rather a restraint upon the sale thereof, partial and unfair, creating monopolies, or subjecting either the seller or the purchaser to unnecessary inconvenience or expense, it certainly could not be upheld."

So in Minnesota, in The City of St. Paul v. Saidler, 2 Minn. 190, which was a prosecution under an ordinance of the city of St. Paul regulating the sale of fresh meats in said city, which prohibited such sale without a license outside the public market established in said city, the ordinance was held to be in restraint of trade, unjust, oppressive and void.

In that case the court say: " The municipality is a body of special and limited jurisdiction; its powers can not be extended by implication or intendment. In the exercise of its legitimate authority, or power of creating ordinances or by-laws for the government of the city, the power or authority must be exercised reasonably and with sound discretion, and strictly within the limits of its charter, and in subordination to the Constitution and general laws of the land and the rights of others dependent thereon. 2 Kent's Com. 290.

"But if this ordinance embraces within its scope attainments of objects not consistent with the manifest intent of the Legislature in making the grant of power, and which restrains and limits the right which citizens before enjoyed, neither upon reason or upon authority can it be sustained, but must be held void." That court further say: "By this ordinance no general rule has been prescribed which shall apply equally to all; by it the common council assume the right to restrain such persons as they may choose to designate from engaging in a trade or calling which, by common law, was free to all."

In New York, in the case of The Village of Buffalo v. Webster, 10 Wend. 100, the court, by Savage, C. J., said: "At common law, corporations have the power to make by-laws for the general good of the corporation. They must be reasonable and for the common benefit; they must not be in restraint of trade, nor impose a burden without an apparent benefit. A by-law for the regulation of trade, imposing particular restraints as to time and place, is good, but general restraints are bad."

To the same purport is the case of Clark v. LeCrum, 9 Barn. & C. 5219.

The doctrine of the common law was that any person might carry on any lawful trade or calling in any place in the realm, unless there should be a custom to the contrary. If there existed no such custom, a by-law or ordinance of a municipality contravening or affecting such right was held to be in restraint of trade and against public policy, and therefore void. Clark v. LeCrum, *supra;* Harrison v. Goodman, 1 Burr. 12; Clark v. Crompton, 7 D. & R. 597; Rex v. Harrison, 3 Burr. 1322.

In these cases, and, indeed, in all the common law cases which we have been able to find, by-laws of the character named seem to have been held bad, except where supported by special custom—not upon the ground that it was an absolute prohibition from engaging in trade, but because of imposing restrictions upon the exercise and enjoyment of a right which, by the common law, was free to every one, without restraint.

One of the important restrictions to which special allusion is made in the cases at common law, was the additional expense involved in the exercise of the trade affected by the by-law. In the case of Rex v. Harrison, *supra*, this point was specially made in the argument of counsel and emphasized in the opinion of the court.

In the case at bar, not only is there additional expense imposed upon those who would exercise the trade of a peddler, residing outside the appellant municipality, in compelling them to pay a license fee, but it tends directly to create a monopoly of a trade or calling in persons resident of the corporation, and discriminates unjustly against persons non-residents thereof; and, if possible, to make the injustice more manifest, the price of such license is entirely in the discretion of the president and board of trustees of this municipality, without power of revision by any court, however arbitrarily or unreasonably such discretion may have been exercised.

It is difficult to perceive how such an ordinance, aimed at any branch of business, industry or calling, can, by any possibility, operate for the common benefit, or for the benefit of any one, save the municipality and the favored few residents thereof, in whose behalf the monopoly is sought to be created. Its effect must be to increase the price of the commodity sold, in proportion to the restriction imposed upon those engaged in the trade.

It must operate prejudicially—certainly to the prejudice of those desiring to engage in that branch of business, whatever it may be, as well as to the citizens at large, for the greater the competition the less the price to the consumer, is the law of demand and supply; and if the by-law or ordinance in question can be sustained in this case, the same principle must apply, when invoked, to all trades and business pursuits, necessitous or otherwise, however capriciously or unreasonably exercised, by any or all the municipalities in the State. Ducat v. Chicago, 10 Wall. 410.

In Ward v. Maryland, 12 Wall. 418, it was held that a statute of Maryland which required all residents within the State to take out a license, and pay therefor certain prices fixed by a sliding scale as provided by such statute, and making it a penal

offense for any person not a permanent resident of the State to offer for sale any goods, wares or merchandise whatever, other than agricultural products and articles manufactured in Maryland, within certain limits fixed by the statute, by card or sample trade list, or catalogue, without first procuring a license therefor, for which the price of $300 was established, imposed a discriminating tax and burden upon non-resident traders, doing or desirous of doing business within the limits mentioned, and was therefore void.

We have given to this question careful consideration, and we have been unable to find adjudicated case, or elemental principle, contravening the views before set forth; certainly none has been cited or alluded to in the argument before us.

While the right is conceded to the appellant municipality to adopt such general regulations as may be necessary and reasonable to protect the life, health, property or morals of its citizens, in common with that of others, to the fullest extent, we think the exercise of this right should be carefully guarded and limited within the clear grant of power for such purpose delegated, and when a serious question arises as to any particular by-law, ordinance or regulation of such municipality, wherein it is claimed to interfere with the rights of citizens of the State, although non-residents of such municipality, as before enjoyed under the common law or by statute, the burden of proof should be upon the corporation to establish that it had authority to enact such ordinance.

Upon the whole, therefore, we are satisfied that the ordinance in question is not merely a regulation, but it is in restraint of trade; that it is unreasonable, unnecessary and inequitable, unequal and unjust in spirit and effect, in direct contravention of the spirit and policy of the Constitution and laws of this State, in that it tends to create monopolies, makes unjust and unwarrantable discrimination between resident and non-resident citizens of the appellant municipality exercising the same calling and business, which, before the enactment of such by-law, was, by the laws of the State, free to all—unequal and oppressive, and, therefore, against public policy and void.

Finding no error in the judgment of the Circuit Court, its judgment is affirmed.         *Judgment affirmed.*