### STATE v. T. F. HUNTER.

*Arrest—Police Officers—Municipal Ordinances—Constitution—Nuisance.*

1. A police officer may make arrests, without warrant, for violations of municipal ordinances, when committed in his presence; but he must determine, at his own peril, the fact that there has been a violation of a *valid ordinance.* If the ordinance is invalid, the fact that he acted in good faith will not protect him—the question of *bona fides* only arises in determining the *extent of force* used by him in overcoming resistance to arrest.

2. An ordinance which declared that " whenever three or more persons obstruct a sidewalk it shall be the duty of the officer to request them to move on, and if such persons unreasonably persist in remaining so as to incommode others passing, he (the officer) shall take them to the station-house," is in contravention of the Constitution, in that it subjects the citizen to imprisonment at the will of the officer, and without giving him an opportunity for trial or preliminary examination.

3. The act of one person in simply stopping on the sidewalk of a street for a reasonable time, without misbehaving in any way, does not constitute such a nuisance as the city of Asheville had the power to forbid and punish under its charter.

(DAVIS, J., dissenting.)

This was an INDICTMENT for false imprisonment, tried at January Term, 1890, of the Criminal Court of BUNCOMBE County, *Moore, J.,* presiding.

The defendant was a policeman of the city of Asheville, and arrested one Samuel Bennett, without warrant, for alleged violation of city ordinances, in the following words:

"Any persons assembling and loitering on the streets in sufficient numbers or in such manner as to cause an obstruction to free passage of the streets, or sidewalks, or crossings, and failing to disperse upon notice by any officer or any member of the police, shall, on conviction, be fined ten dollars.

"Whenever three or more persons obstruct the sidewalk, it shall be the duty of the officer to courteously request them to move on, and if such persons unreasonably persist in remaining, so as to incommode others passing, he shall take them to the station-house."

After several witnesses had been examined for the State, the defendant testified, in his own behalf, as follows: "Four or five months ago, Mr. Bennett and four or five others were standing on the sidewalk in front of Powell & Snider's store while people were passing, and they had to step out on the curbing to get around them. I asked them, politely, to get off the sidewalk and not obstruct it, and they all went off, except Bennett, who said to me, 'There is room.' I told the prosecutor for the third time to move, and he refused to do it. I had no warrant or other process for the prosecutor at the time, but the next morning I swore out a warrant" (which was produced in evidence). "I was at that time a policeman. The prosecutor was drunk and acted like a drunken man. I told him that he was drinking. The prosecutor only remained in the calaboose twenty or thirty minutes, and I told him that if he or any of his friends would deposit five dollars in lieu of bond, I would let him go until next morning, and then appear before the Mayor. One Smith deposited with me the five dollars. The prosecutor did not demand to be permitted to give bond, nor did he offer bond nor deposit any money in lieu thereof. No one offered to go his bail, and Smith deposited the five dollars after the prosecutor was confined in the calaboose."

On cross-examination, the defendant stated that "Bennett was standing nearly in front of the store door, and about three and a half feet from the edge of the sidewalk, and when he asked him to move he said 'There's eight feet'; but there was not so much as eight feet between the place where the prosecutor was standing and the edge of the sidewalk, which is not more than eight feet wide at that place. The arrest

was made, about sunset, for a violation of the city ordinances by blocking the sidewalk, and people were passing at the time.   He did not decline to tell the prosecutor for what he arrested him, but did tell him.   Prosecutor said something about going to Thrash's, or somewhere else, to get bond. Defendant declined to go with him, but told him he could give bond, but would not take him to hunt it up.   Prosecutor did not offer to go to procure bail before he got into the cala-boose.   Pulliam, one of the aldermen of the city, was, at that time, Mayor *pro tem.*   His place of business is in the Bank of Asheville, two hundred yards away, and it was about the same distance to the calaboose from where the arrest was made.   Pulliam was not in the bank at that time, but was at his residence, about half a mile distant."

Upon re-direct examination, the defendant stated that "Thrash's place of business was between said bank and the place of arrest.   No surety was present to go on the bond, and prosecutor only suggested that he could give bond."

Other witnesses were examined and a number of excep-tions were taken to the charge that became immaterial in the view of the case taken by the Court.   The defendant appealed from the judgment pronounced on the verdict of guilty.

*The Attorney General,* for the State.
*Mr. George A. Shuford,* for defendant.

AVERY, J.—after stating the facts: In the case of *State* v. *Freeman,* 86 N. C., 683, the Court distinctly recognized the right of a police officer to arrest without warrant, not only for felonies, riots and breaches of the peace, but for viola-tions of a city or town by-law prohibiting nuisances, and which the municipality has the power to make, when the offence is committed in his presence.   *The Code,* § 3820,

makes, it a misdemeanor to violate any valid city or town ordinance.

. The city law, relied upon by the defendant to justify the arrest, is not very happily and clearly expressed. The first section offered (number 348) makes the graveness of the offence created by, it consist in the failure on the part of the persons, who, by assembling in sufficient numbers in the streets, have caused an obstruction " to disperse upon notice by any officer, or any member of the police." According to the defendant's own account of the transaction, the prosecutor Bennett and four or five others were standing in front of Powell & Snyder's store, when they were asked, politely, not to obstruct the sidewalk, and all of the others immediately went away, leaving Bennett alone. Bennett then said, "There's room," whereupon the defendant, after the prosecutor had been requested three times "to move," and had not done so, arrested him. A man cannot be guilty of a nuisance by merely standing still on a sidewalk and refusing to move at the command of a policeman. Even under the phraseology of the ordinance he was not guilty, if the failure to "disperse" was essential to constitute guilt. An obstruction may be removed and a crowd dispersed if all save one go off in different directions and he stands his ground. The act of one person halting on the streets for a reasonable time without misbehaving himself in any way is not such a nuisance as the city has a right to forbid by its laws under the general power delegated to it. Cooley Const. Lim., star p. 200. The section referred to imposes a fine of ten dollars for a violation, and if its provisions are within the purview of the powers granted to the corporation, the violation was also a misdemeanor. The other ordinance (Rule 15) is not materially different as to what it professes to prohibit and prevent, but it is amenable to objection as legislation *ultra vires*, in that, instead of a fine, it imposes the punishment of imprisonment in the station-house, to be

inflicted at the discretion of an officer without a previous preliminary examination. Not only is the right of municipalities to make by-laws restricted to the express legislative grant of authority given in the charters, or contained in the general laws defining the rights, duties and powers of· all such corporations, but they are subject to the limitations contained in the Constitution of the United States and that of the State in which they may be situated. Cooley's Const. Lim., star pp. 198 and 199.

The second ordinance relied upon for the protection of the officer (Rule 15) is clearly in violation of the Constitution (Art. 1, §§ 12, 13 and 17), in providing that a person may be arrested because he refuses to "move on," and (in the opinion of the officer, who is left to judge of his conduct) "unreasonably persists in remaining so as to incommode others passing," and can be taken, without warrant or hearing, to the station-house. Under this law he may be deprived of his liberty and sent to a dungeon, not only without trial, but without even a preliminary examination, or an opportunity to give bail for his appearance at an investigation to be had in future, because, in the opinion of a policeman, he consumes an unreasonable time in exchanging greetings with two friends whom he meets upon the sidewalk of the city. In the case of *Judson* v. *Peardon*, 16 Minnesota, 431, defendant justified in an action, brought against him to recover damages for arresting the plaintiff under an ordinance of the city of St. Paul, which provided that any one who refused, without sufficient excuse, to obey any order or direction given at a fire by a person duly authorized to order or direct, should pay a fine not exceeding fifty dollars, and that "any member of the Common Council or any fire warden may arrest and detain such person till the fire is extinguished." The Court held that the clause permitting the arrest and detention during the fire was unconstitutional and void, and that if the plaintiff had violated any valid

city ordinance, he might have been arrested without warrant. This case has been cited with approval by both Cooley and Dillon. Cooley's Const. Lim., star p. 201. p. 245, note 3; Dillon on Corp., sec. 414, note.

It was held also that an ordinance providing for the destruction of property as a nuisance, without a judicial hearing, was void under a section in the Constitution of Illinois, substantially the same as that already cited from our own organic law (Art. 1, sec. 17). *Dorst* v. *People,* 51 Ill., 286.

The by-law, distinguished as Rule 15, is unconstitutional and void. If the other section is sufficiently intelligible to be enforced under a strict construction of its language in any conceivable case, it is certain that the conduct of the prosecutor in failing "to disperse," after his comrades had deserted him, did not, according to defendant's own account of the transaction, subject him to liability either for the penalty prescribed or to indictment under the general law making it a misdemeanor to violate a town ordinance.

The charter of the city (ch. 111, secs. 26, 27 and 59, Private Laws of 1883) gave the city Marshal the powers as a peace officer of the Sheriff or constables of the County of Buncombe, and to both the Marshal and a policeman the authority to make arrests—

"1. Whenever he shall have in hand a warrant, duly issued by the Mayor of the city of Asheville or a Justice of the Peace of the county of Buncombe.

"2. Whenever any misdemeanor or violation of any ordinance has been committed, and he has reasonable cause to believe that the suspected party may make his escape before a warrant can be obtained."

The power to arrest without warrant is, in express terms, confined to two classes of cases—where he sees an offence committed, or where he knows it has been committed, and

has reasonable ground to apprehend an escape. The latter provision enlarges his authority beyond that of a Sheriff or Constable, but upon condition that the ordinance has certainly been violated.

Judge DILLON, in his work on Municipal Corporations (Vol. 1, § 211), says: " Charters authorizing municipal officers to make arrests upon view and without process, are to be viewed in connection with the general statutes of the State, and being in derogation of liberty are strictly construed." *Petersfield* v. *Vickers*, 3 Coldw. (Tenn.), 205; *White* v. *Kent*, 11 Ohio S., 550.

In the exercise of the extraordinay power given him by the charter, it was the duty of the defendant, before he touched the person of the prosecutor and demanded a surrender of his liberty, to know that the misdemeanor had been committed, either from seeing or from such information as made him willing to incur the risk of indictment, or of being mulcted in damages if no ordinance had been violated. The question of good faith on the part of the policeman comes to his aid when he is resisted in making an arrest that he has an undoubted right to make, if there be resistance, and the question arises whether excessive force was used to overcome it; but policemen of Asheville must determine, at their peril, preliminary to proceeding without warrant, whether a valid ordinance has been violated within or out of their view. The principle recognized in the cases of *State* v. *McNinch*, 90 N. C., 695, and *State* v. *Pugh*, 101 N. C., 737, was never intended to apply in any case except where an officer is making a lawful arrest. In the case of *Judson* v. *Reardon*, *supra*, another principle was laid down, which seems to have met with approval also. It was held that, the arrest having been made under a void by-law, and being without authority, the officer making it could not rely upon his good faith as a defence to an action brought by the party imprisoned for malicious prosecution,

and that if the arrest was made upon the first part of the ordinance, which was not unconstitutional, the honest purpose of the defendant would not protect him, because the plaintiff had violated that part of the ordinance by crossing the hose. There two distinct provisions, one valid and the other void, were embodied in one paragraph, while in our case they are the subjects of distinct sections. The difference in that respect can give rise to no distinction between that case and the one before us, for a legislative or a municipal law may be valid in part and void in part, and the portion not repugnant to the organic law will be enforced just as if it had been a distinct statute.

There was no suggestion in the evidence that the prosecutor " was found drunk in the streets, hollowing or making an unusual noise," so as to bring him within the letter, or even the spirit, of the only other ordinance offered in evidence, designated as section 645. The fact that the prosecutor told the defendant that he had been drinking, or acted like a drunken man, or that he even was drunk, without making any noisy demonstration, neither subjected him to liability for the penalty, nor to indictment, because, under a strict construction of the law, he must have been both drunk and noisy.

This case may be distinguished from that of *State* v. *McNinch*, 87 N. C., 567, in the fact that in the latter the arrest was made under an ordinance declaring public drunkenness and loud and profane swearing to be a nuisance. The Court held that where one was found drunk and swearing in an open space in the rear of a bar-room, it was public drunkenness, though in a private place, and that the defendant was, therefore, liable under the letter of the law. That case went to the extreme limit in sustaining the right to declare any act a nuisance that was not a nuisance at common law, and especially when no specific power to enact the by-law was shown to be in the city charter.

We conclude that, according to the defendant's own evidence, he was guilty, and, therefore, though the Judge may have failed to state the law correctly in submitting to the jury the whole case, still the defendant is not entitled to a new trial if he was guilty in the aspect of the testimony most favorable to himself and founded upon the conception that his own statement was true. The judgment must be affirmed.

Affirmed.