## THE STATE v. A. WEBBER.

*Municipal Ordinance—Evidence—Disorderly and Bawdy Houses—Nuisance.*

1. A municipal corporation can exercise only such powers as (1) those which are granted in express words; (2) those necessarily or fairly implied from the charter, and (3) those essential to the declared objects and purposes of the corporation—not such as are simply convenient, but those which are indispensable.

2. Under the authority conferred upon a municipal corporation to adopt ordinances for the government of the corporation and to abate or prevent nuisances, no power is granted to enact that the permitting of prostitution by the owner or occupant of any house therein shall constitute such owner or occupant the keeper of a house of ill fame, nor to declare what shall be a bawdy house or a disorderly house.

3. Nor has such municipal corporation the power to establish rules of evidence.

4. If a part of an ordinance is void, all other clauses with which the invalid part is necessarily connected or which are dependent on it are also void.

5. Under a general power in a charter to suppress houses of ill fame, a city may pass an ordinance forbidding owners to rent houses for the purpose of being used as bawdy houses, or with a knowledge that they will be so used by the lessee, but its authorities are not thereby empowered to define what is a house of ill fame, or declare a given house to be a bawdy house.

This was an indictment for violation of a city ordinance, tried on appeal from the Municipal Court of Asheville, in the Criminal Court of Buncombe County, before *Moore, J.*

The defendant in the Court below excepted to the charge of the Judge that the Mayor and Board of Aldermen of the city of Asheville had power to pass the ordinances for a violation of which he was indicted. The charter of the city of Asheville (section 18, chapter 111, Private Laws of 1883) provided that "the Aldermen, when convened, shall have power to make, and provide for the execution thereof, such ordinances, by-laws, rules and regulations for the better government of the city as they may deem necessary." And section 3802 of *The Code* empowers the authorities of all towns to pass laws for abating or preventing nuisances of any kind."

The ordinances upon which the indictment was founded were the following:

"Sec. 657. That the occupant or owner of any house or room, or part of the same, within the city of Asheville, who shall suffer or allow prostitution therein, or males and females to cohabit therein, without then and there being lawfully married, shall be deemed the keeper of a house of ill fame, and be fined, on conviction, the sum of fifty dollars.

"Sec. 658. Circumstances from which it may reasonably be inferred that any house is inhabited or frequented by disorderly persons, or persons of notorious bad character, shall be sufficient to establish that such house is a disorderly, or house of ill fame.

"Sec. 659. Any person or persons being the owner or owners, occupant or occupants of any house of ill fame, and shall continue the same, or allow the same to be continued, for two days after being so adjudged, shall, on conviction thereof, be fined fifty dollars, and the Chief of Police shall close up and guard such house or houses, and keep the inmates within the same until a warrant or warrants can be

procured for the arrest of the owner or owners, occupant or occupants."

The defendant excepted to the refusal of the Court to instruct the jury, upon the testimony, that the defendant was not guilty.

*The Attorney General,* for the State.
*Mr. V. S. Lusk,* for defendant.

AVERY, J.—after stating the case: In *State* v. *Calley,* 104 N. C., 858, it was held that, in order to prove the charge of keeping a bawdy house, or house of ill fame, it must be shown that it was a common resort of people of both sexes for the purpose of prostitution, and that it was not sufficient to prove acts of illicit intercourse on the part of the occupants without showing also that it was kept for the convenience of people who visited it to indulge in lewdness. The Aldermen were not authorized, by virtue of the power given them by the Legislature to "abate or prevent nuisances," or to pass "such ordinances, by-laws, rules and regulations for the better government of the city as they deemed necessary," to enact a law declaring that not only suffering or allowing prostitution, but permitting single acts of illicit sexual intercourse in a house or room, should constitute the owner or occupant of the room or house the keeper of a house of ill fame. To lay the foundation for suppressing, they first declare (in section 657) *that a bawdy house* which the law declares is not one. In the next section (658) they assume, without warrant, the right to enact a rule of evidence, and that section, whether in consonance with, or repugnant to, the established rules of testimony, is void. Competent testimony would be admissible on the trial of a properly constituted case, under the general law of evidence, not by reason of the passage of a by-law without authority. But it is scarcely necessary to say that circumstances which

justify the reasonable inference that a house is either "inhabited or frequented by disorderly persons, or persons of notoriously bad character," are not, without further testimony tending to show actual disorder or prostitution, sufficient to go to the jury to establish a charge of keeping either a disorderly house or a bawdy house. It is provided in section 659 that when any owner or occupant, after it is "so adjudged" (viz., under the preceding void ordinance affixing a penalty, and the other void ordinance changing the rules of evidence) that his home, building or room is a house of ill fame or bawdy house, shall continue for two days longer to allow "disorderly persons, or persons of notorious bad character," to frequent such house or room, he shall be fined fifty dollars, and the Chief of Police shall guard such house, and keep the inmates within the same, until a warrant can be procured for the arrest of such owner or occupant. This last section is void, because it hinges on, and is dependent upon, the two preceding sections, they being so connected that the liability to the fine under the last section depends upon a previous conviction under section 657, which was enacted without authority, and that conviction could be made under the evidence declared sufficient without the power to do so in section 658. "If a part of a by-law be void, another essential and connected part of the same by-law is also void." 1 Dillon on Mun. Corp., § 354 (421) and note 2 (to fourth edition); *Commissioners* v. *Hitchings*, 5 Gray (Mass.), 482.

In volume 1, § 89 (55), Dillon says: "It is a general and undisputed proposition of law that a municipal corporation possesses, and can exercise, the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the Courts

against the corporation, and the power is denied." The power to prevent nuisances does not, directly or by implication, carry with it the authority to hold the owner of a building, who may never himself visit it, responsible for the nuisance of keeping a house of prostitution, bawdy house, or house of ill fame, committed by his tenant without his knowledge or consent, and subject him to a fine, to say nothing of the disjunctive liability to be deemed the keeper of a house of ill fame and to have the inference drawn against him on account of the bad character rather than the conduct of those who occupy his houses as lessees or frequent them. Such a by-law is not only unauthorized, but unreasonable.

If the power to suppress bawdy houses had been given in express terms, as has been done in some instances, the city could not even then have usurped the authority to enact that persons not guilty of nuisance under the established principles of law should be deemed guilty of keeping bawdy houses, and to prescribe new rules of evidence to be adopted on the trial. *The City of Charlton* v. *Barber*, 54 Iowa, 360; *Dorst* v. *People*, 51 Ill., 286; *City of Mt. Pleasant* v. *Bruse*, 11 Iowa, 399; Wood on Nuisances, §§ 740, 741; 1 Dillon, §§ 309, 310

If the words, "be deemed the keeper of a house of ill fame and," were treated as surplusage, the ordinance, after striking them out, would not be valid, because the city had no express authority to impose a penalty on owners as well as occupants, not only where prostitution but also where any illicit intercourse whatever is allowed in a house or a room separately leased or sublet, and, under a general power to suppress, much broader than that given to the city by the charter or general law, such a by-law would have been declared unreasonable. Under a general power to suppress houses of ill fame, it has been held that an ordinance was valid which forbade owners from renting their houses to others for the

purpose of using them as bawdy houses, or with a knowledge that they were to be so used, but such general law does not empower a city to declare that a given house is kept as a house of prostitution, or to define and declare what is a house of ill fame. 1 Dillon Mun. Corp., § 376 (310); *ibid.*, 375 (309), and notes.

The violation of a valid ordinance is, under the provisions of section 3820 of *The Code*, a misdemeanor, but it is not a criminal offence to disregard one enacted without authority. *State* v. *Hunter*, 106 N. C., 796.

There was error. The Judge below, upon the introduction of the ordinances and the development of all the evidence, ought to have instructed the jury to return a verdict of "not guilty," and there must be a new trial.

