THE STATE v. J. A. TENANT.

*Police Regulation—Corporations, Municipal—Ordinances, When Void.*

1. The ordinance of the city of Asheville, providing that no person shall erect within the city limits any house or building of any kind, or add to, improve or change any building without having first obtained permission from the Board of Aldermen, is void, for the reason that it does not prescribe a uniform rule of action for governing the exercise of the discretion of the Aldermen, but on the contrary, leaves the rights of property subject to their arbitrary discretion.

2. And a subsequent ordinance adopted to enforce the provisions of such invalid ordinance, by providing penalties against any person who shall construct or work upon the construction of any building being erected without the required permission, is void upon the same ground; and in this case is void upon the further ground that it was enacted after the contract to construct the building was entered into, and the work had commenced.

INDICTMENT for violation of a city ordinance, tried on appeal from the judgment of the Mayor of the City of Asheville, at October Term, 1891, of the Criminal Court of BUNCOMBE County, before *Carter, J.*

The jury returned a special verdict, substantially as follows:

1. That the city of Asheville is a corporation, etc.

2. That the Asheville Mission Hospital is a corporation, etc., and has for several years been conducting a hospital for

110—39

sick and destitute persons, on a lot of land owned by it in the city of Asheville.

3. That the city duly passed the following ordinance: "That no person, firm or corporation shall build or erect within the limits of the city any house or building of any kind or character, or otherwise add to, build upon or generally improve or change any house or building, without having first applied to the Aldermen and obtained a permission for such purpose."

4. On the 15th of May, 1891, the architect and agent for said Mission Hospital applied to the Aldermen for permission to erect a building on said lot, to be used as a hospital for sick and diseased persons, in connection with the building already on said lot, and which had been previously used by said Mission Hospital for said purpose.

5. That the following is a by-law of said Mission Hospital: "No person afflicted with infectious or contagious disease shall be admitted to the hospital, except by special permission and arrangement of the Board of Managers, acting under the advice of the chief physician, or some other member of the Medical Board lawfully acting in his stead;" but cases of typhoid fever have been admitted into said hospital and cared for there.

6. That a petition was filed by a number of citizens of the city of Asheville asking the Aldermen to refuse to permit said hospital to erect said building, and that the Board of Aldermen, on the 12th of June, 1891, appointed a committee to investigate the matter, and on the 26th of June, 1891, the Aldermen refused to grant the permission asked for, without assigning any reason for such refusal.

7. That after said refusal, work was commenced on said building and prosecuted for sometime under a contract previously made by the defendant with the said Mission Hospital, and under the direction of its managers.

8. That on the 28th of August, 1891, the Aldermen passed the following ordinance: "That no person or persons shall construct, or shall encourage or aid in the construction of, or shall work as a contractor, carpenter, laborer, brick or stonemason, or any other capacity in the construction of any building within the corporate limits of the city, for the construction of which building no permit has been granted by the city: *Provided, however,* that no act shall be deemed a violation of this ordinance, except such as are committed by the party or parties charged with such violation after he or they shall have been duly notified by the Chief of Police that no permit has been granted for the construction of said building. Any person violating said ordinance shall, on conviction thereof, be fined $50."

9. The defendant had knowledge of the foregoing facts and ordinances, and was notified by the Chief of Police to stop work on said building, but he disregarded said notice and continued to work on the same until his arrest.

10. That on the 5th of October, 1891, the defendant was arrested by a warrant, tried and convicted before the Mayor, and appealed to the Criminal Court of Buncombe County.

If the Court is of opinion that said ordinances are valid and constitutional, the jury find the defendant guilty; but if the Court be of opinion that they are invalid and unconstitutional, the jury find the defendant not guilty.

The Court being of opinion that the ordinances are valid and constitutional, adjudged that the defendant was guilty, and that he pay a fine of fifty dollars and costs. From this judgment the defendant appealed to the Supreme Court.

*The Attorney General* and *Mr. T. H. Cobb,* for the State.
*Messrs. W. W. Jones* and *F. A. Sondley,* for defendant.

AVERY, J.: The Legislature is empowered under the organic law to restrict an individual by direct enactment in

the exercise of such dominion and control over his own house or premises, as may result in injury to others, provided the prohibitory or restraining statute does not upon its face discriminate in favor of one person or class of persons over others. And, though the law-making power can unquestionably create a municipal corporation and delegate legislative authority to it, it cannot clothe the creature with power to do what the Constitution prohibits the creator from doing. Cooley Const. Lim. (4th ed.), 198; *Weith* v. *Wilmington*, 68 N. C., 24. Police power may be exercised by the sovereign State through the General Assembly in derogation of the absolute right of the individual only for the general benefit, and by means of statutory provisions that upon their face operate indiscriminately upon, and are enforcible by the same species of process against all persons and classes. *State* v. *Moore*, 104 N. C., 721; *State* v. *Chambers*, 93 N. C., 600; *State* v. *Stovall*, 103 N. C., 416; *Diset* v. *West Virginia*, 129 U. S. Rep., 114; *Mogler* v. *Kansas*, 123 U. S. Rep., 623. "Towns and cities cannot use their power to create monopolies for the benefit of private individuals, nor can they pass by-laws imposing penalties that do not operate equally upon all citizens of the State who may come or live within the corporate limits." *State* v. *Pendergrass*, 106 N. C., 664; *State* v. *Summerfield*, 107 N. C., 898; 1 Dillon, sec. 380 (313).

It is equally clear, that if an ordinance is passed by a municipal corporation, which, upon its face, restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of Aldermen who may exercise it so as to give exclusive profits or privileges to particular persons. *Newton* v. *Belger*, 143

Mass., 598; *City of Richmond* v. *Dudley*, Northern Reporter, vol. 28, No. 13, p. 312; Yick Wo , 118 U. S. Rep., 356; *May* v. *People*, 27 Pacific Rep., 1010; *Baltimore* v. *Rodeck*, 49 Md., 217; *Anderson* v. *City of Wellington*, 40 Ks., 173; *In re Frazee*, 63 Mich., 396; *Tugman* v. *Chicago*, 78 Ill., 405; *Village of Braceville* v. *Doherty*, 30 Ill. App., 645; *Barthel* v. *City of New Orleans*, 564; *Bolls* v. *City of Goshen*, 117 Ill., 221; *Lake View* v. *Lutz*, 44 Ill., 81; Horr & Bemis on Mun. Police Ordinances, sec. 13; *Evansville* v. *Martin*, 41 Ind., 145.

The first ordinance relied upon to support the indictment provides: "That no person, firm or corporation shall build or erect within the limits of the city of Asheville * * * any building of any kind or character, or otherwise add to, build upon, or generally improve or change any building, without having first applied to the Aldermen and obtained a permission for such purpose." Whether the landowner proposes to erect on his premises a storehouse, opera-house, dwelling, stable, kitchen, hen-house, and whether he proposes to use fire-proof or combustible material in the structure, he is required to apply to the Aldermen of Asheville for a permit, and if the ordinance is valid he incurs liability for violation of it the moment he begins the work of building. Moreover, if he should add a porch, a tower, or improve by digging a cellar the dwelling-house occupied by him, he would subject himself to like danger, though he should use no material in making the improvement not generally considered fire-proof. But while the right to prohibit the erection of a building without regard to the material to be used in constructing it, has been held unreasonable, the most objectionable feature of the ordinance is the reservation by the Aldermen of the right to refuse the application of one landowner and grant that of another, arbitrarily and despotically, when, for all material purposes, the two apply for precisely the same privilege.

We concede that the constitutionality of an ordinance prohibiting the erection of wooden buildings, or buildings with wooden or shingle roofs, in the thickly settled portions of towns, and requiring a license before beginning to build such structures, has been usually, if not universally, sustained where the ordinance laid down a general rule that precluded the possibility of discrimination and favoritism in granting the license so as to limit the privilege to certain persons. *Codes* v. *Miller,* 33 Am. Rep., 330; Tiedman on Police Power, 439, 440. We admit, also, that there are authorities which maintain the doctrine that even where contracts have been made with builders for the erection of such wooden buildings, before the passage of a valid ordinance, the builder is considered as having entered into the contract, subject to the right of the municipality to enact a prohibitory by-law and annul his contract at any time before he begins to build and expend money, that he may lose, if prohibited from finishing. *Knoxville* v. *Bird,* 12 Lea (Tenn.), 121.

In *Yick Wo* v. *Hopkins,* 118 U. S. Rep., 356, the Court held that it was a violation of the 14th Amendment (in withholding the equal protection of the law) to pass and enforce ordinances in the city of San Francisco, which forbade persons to erect scaffolds on roofs, or carry on laundries in that city, without license or the consent of the supervisors, because it conferred upon the municipal authorities arbitrary power, at their will and without regard to the competency of the person applying, or the propriety of the place selected for carrying on the business." No matter, therefore, if the circumstances of a particular case were such that an applicant seemed about to create a nuisance, he could not be punished under a void ordinance, or one which prescribed no rule for the exercise of discretion on the part of City Aldermen in restricting persons in the enjoyment of their rights of property or person. *State* v. *Webber,* 107 N. C., 962; *State* v. *Hunter,* 106 N. C., 796.

In the case of *Newton* v. *Belger, supra,* not only is the same principle enunciated, but the ordinance is almost identical with that under consideration in the case at bar.   The prohibiting portion was as follows: "No person shall erect, alter, rebuild or essentially change any building or any part thereof, *for any purpose other than a dwelling-house, without first obtaining, in writing, a permit from the Board of Aldermen.*"   The Court said: "It does not merely forbid the erection of any building which is hazardous, and which exposes other persons or property to danger.   *   *   *   *   *   *   On the contrary, it gives them the power, by refusing a permit, to prevent the erection of any building, except a dwelling-house, for any reason which may be satisfactory to them. Under the ordinances they may refuse a permit, because, in their opinion, it is desirable that certain parts of the city shall be used for handsome dwelling-houses, and that all buildings for the purpose of trade, shall be excluded, though, in no sense, dangerous."   *   *   *   *   *   *   What is there in the ordinance under consideration to prevent the Aldermen, if they were so inclined, from prohibiting the construction of any houses, in a defined boundary, except costly dwellings, and thereby enhancing the value of the property, in which they have a personal interest?   We have no idea that any such purpose exists, but we cannot sanction the enforcement of an ordinance by means of which the Aldermen may at any time, not only entertain, but act upon such an improper motive.

Upon the principle which we have announced, an ordinance fixing the amount of city tax on theatres, roller-skating rinks, etc., at such sum of money, as the council should determine in each particular case, was held void, because it gave power to discriminate "between persons engaged in like business."   *Bills* v. *City of Goshen, supra.*   An ordinance aimed at the Salvation Army, which forbade any persons or society to parade a street, singing or beating drums, etc.,

without having first obtained the consent, in writing, of the Mayor, or in his absence, of the President of the City Council, was declared void upon the same ground. *Anderson* v. *City of Wellington, supra.*

In *Horr* v. *Bemis, supra,* section 263, the rule as to the proper form of ordinances in reference to granting license is laid down as follows: "As has already been stated, no discretionary powers should be vested in officers whose duty it is to execute the provisions of ordinances, and the rule is applicable to this class of ordinances. The *ordinance itself* should specify every condition of the license, and the officer should be merely entrusted with the duty of issuing licenses to all who comply with the prescribed conditions." In *State* v. *Hunter, supra,* this Court held an ordinance unconstitutional because it clothed a policeman with an arbitrary discretion to determine what was a reasonable time to wait for persons to move off the sidewalk before making an arrest.

The case of *State* v. *Yopp,* 97 N. C., 477, stands upon a very different principle. While the Legislature has no right to enact a law forbidding all men in a certain section from building houses of any kind on their own land, it unquestionably is empowered to forbid riding bycicles on a particular road or street altogether, because the lives of other persons and the safety of the property of others are imperiled by their use on account of the danger of frightening horses attached to vehicles. *Sic utere tuo ut non alienum laedas.* Having power to prohibit using bycicles on the road entirely, the Legislature had the same power to authorize a person or tribunal to grant a license, when the road should be clear of vehicles, that it has to provide for licensing the sale of spirituous liquors.

" Where the nuisance consists, not in the building itself, but in the use to which it is put, the building cannot be destroyed." Tiedman, *supra,* 441. " If a house is used for the purpose of a trade or business by which the health of

the public is endangered, the nuisance may be abated by removing whatsoever may be necessary to prevent the exercise of such trade or business." *Ibid.* The same principle must necessarily apply to construction as to destruction of buildings on account of health. So that if the ordinance, instead of being void for want of a rule governing the exercise of discretion by Aldermen, had provided in plain terms that no person or corporation should be allowed to erect a building without a license at any point within the city, if it were understood that the person or corporation proposed to use the house for a hospital for the infirm or sick, and that the same individual or corporation had admitted a patient suffering from typhoid fever into a hospital under their management on another portion of the same lot, the ordinance would have allowed an unreasonable interference with the rights of landowners, because it is not necessary, in order to protect health, to prohibit a person from building a house according to any plan on his own land, but the end may be reached by prohibiting the reception of patients who are suffering from infectious or contagious diseases. The act incorporating the Asheville Mission Hospital, with which the defendant contracted to build, empowered the corporation to erect one or more hospitals "for unfortunate and destitute persons," and invested it with authority to make by-laws, etc. Private Laws of 1891, ch. 306, secs. 3 and 4. So that the officers might, while the building was in the course of erection, have enacted a by-law providing that only aged and infirm persons who were destitute should be admitted. Instead of using their authority to prevent the spread of disease, the ordinance leaves it in the power of unprincipled officers to locate hospitals entirely with a view to enhancing the value of certain property. The erection of the hospital in a section where there were only tenement houses might enhance values of property in the vicinity, while if located in a more fashionable quarter it might be considered an eye-sore.

It seems, however, that the corporation, in the case at bar, have already a building on the same lot, which had been used as a hospital, and had asked a permit to add another, and thereby furnish additional accommodation for the sick, and had passed a by-law forbidding the reception of patients suffering from contagious or infectious diseases, except by special arrangement with the managers, under the advice of the physician. But cases of typhoid fever had been admitted to that hospital. We do not know, judicially, whether that disease is infectious or not; but if the city, instead of the Mission Hospital, will enact just such a prohibitory by-law applicable to all hospitals within the corporate limits, that question can be determined in the appointed way. *Arkadelphia* v. *Clark*, 27 Am. and Eng. Corp. Cases, 586. After the license to build was refused, the work of building was commenced and prosecuted for sometime under a contract previously made by the defendant with the Mission Hospital. Subsequently (August 28th, 1891,) the ordinance providing that a further prosecution of such work, after notice, should subject all mechanics, contractors, etc., to a penalty, was passed, and the warrant, which charges specifically a violation of the said ordinance of August 28th, 1891, was issued on October 5th, 1891. If it be conceded that the first ordinance was void because it prescribed no general rule for the exercise of discretion in granting permits, the ordinance passed after the contractor had expended money in disregard of the void by-law, and providing simply that all persons engaged in erecting such building should be subject to a penalty for failure of the owner of the property to get a permit under the old arbitrary law, would be subject to the same objection, if not to others equally as fatal to its enforcement against the defendant.

There was error in the ruling of the Court that the defendant was guilty, and a new trial must be granted.

                                        Error