## CITY OF SIOUX FALLS v. KIRBY.

1. An action to recover a penalty prescribed by a municipal ordinance, not made a criminal act by the general laws of the state, but forbidden by such ordinance, is a civil action, and may be brought to this court by appeal.

2. A municipal corporation possesses the following powers, and no others: First, those granted in express terms; second, those necessarily and fairly implied, or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.

3. The right of a party to exercise dominion over his own property, and to build upon and improve the same, in accordance with the general laws of the land and municipal ordinances applicable alike to all citizens of a city, is secured by the fundamental principles of the constitution; and he cannot be compelled by the municipal government under which he lives to hold that right subject to the power of granting or refusing a permit to build upon or otherwise improve his property, vested in a city building inspector, from whose decision there is no appeal. KEL-LAM, J., dissenting.

4. An ordinance of the city of Sioux Falls which prescribed that before any person can erect any building or any addition thereto, within the city limits, he must first apply to and obtain from the city building inspector a permit, and who may grant or refuse such permit, and from whose decision there is no appeal, and which subjects such party to a penalty in case he builds without such permit, violates the constitutional rights of the citizen, in that it makes the right of the owner of property to improve and use the same dependent upon the decision of the city building inspector, and is therefore void. KELLAM, J., dis-

senting on the ground that the ordinance in question does not contemplate or allow the inspector to arbitrarily grant or refuse a permit, but authorizes him to decide whether the proposed building will or will not conform to the requirements of the ordinance, and upon such decision to grant or withhold such permit.

(Syllabus by the Court.   Opinion filed Oct. 4, 1894.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action in the city police court of Sioux Falls, charging defendant with the violation of a city ordinance.   On appeal from a judgment of conviction in that court to the circuit court defendant was acquitted and the city appeals to this court. Affirmed.

The facts are stated in the opinion.

*D. E. Powers*, for appellant.

When statements are made to a party under such circumstances as to call for a reply, his silence will be deemed an admission of the truth of such statement.   Corson v. Paul, 41 N. H. 24; Lathrop v. Bamhal, 3 Hun. 394; 1 Rice on Ev. 468; 1 Greenleaf Ev. § 197.   An act to constitute a crime must be an indictable misdemeanor or felony.   Andersons Law Dict. 293; Bishop Crim. Law, § 32.   A city ordinance regulating the construction of buildings inside the fire limits and imposing a fine for its violation is constitutional.   City v. Schmartz, 55 Wis. 483; Welch v. Hotchkiss, 39 Conn. 141.

*Joe Kirby*, for respondent.

The prosecution for a violation of a city ordinance is criminal in its character and penal in its effect.   Village v. Westfall, 42 N. W. 1068; Rex v. Paget, 3 Fost. & F. 29; Stephen His. Crim. L. 96; 4 Bl. Com. 5.   A municipal corporation possesses and can exercise only those powers granted in express words, those necessarily implied, and those essential to the declared object of the corporation,   Frodway v. Schannver, 1 Dak. 227; Vincent v. Nantucker, 12 Cush. 103; Clark v. Davenport, 14 Ia. 494; Clark v. Des Moines, 19 Ia. 199; Windom v. Lanre, 23 How. N. S. 435; Bunk v. Chillecothe, 7 O. St. 31; Collins v.

Hatch, 18 O. St. 523; Sharp v. Spear, 4 Hill 76; Ham v. Muller, 20 Ia. 450.

A municipal corporation has no power to levy a tax upon private improvements, graduated according to the value of the same. Commonwealth v. Stodder, 2 Cush. 562; Dunham v. Rochester, 5 Cow. 462; Mays v. Couller, 1 O. St. 268; Hale v. Kalamazoo, 23 Mich. 344; St. Paul v. Treaget, 25 Minn. 248; Id. v. Staltz, 33 Minn. 233. An ordinance must leave no discretionary power vested in the officer whose duty it is to execute it. State v. Tenant, 15 L. R. A. 423; Id. v. Humler, 106 N. C. 796; Id v. Weber, 107 N. C. 962; Bill v. Goshen, 117 Ind. 221; Yick Wo v. Hopkins, 118 U. S. 356; Baltimore v. Radeche, 49 M. D. 217; Richmond v. Dudly, 3 L. R. A. 423; Newlon v. Belgir, 143 Mass. 598.

CORSON, P. J.   The respondent and defendant was arrested and tried upon a complaint charging him, in substance, with having willfully refused to take out a building permit and to pay the prescribed fee therefor, after being requested so to do by the building inspector of the city of Sioux Falls, contrary to the ordinance of said city. The respondent was convicted in the city police court, but on appeal to the circuit court he was acquitted; that court holding that the provisions of the ordinance requiring a party to take out a permit, and pay a fee therefore, were void. The case was brought to this court from the circuit court by appeal.

The respondent moved in this court to dismiss the appeal upon the ground that the case should have been brought to this court by writ of error, and not by appeal. In a similar case (City of Huron v. Carter, 57 N. W. 947) this court held that the act charged not being punishable by imprisonment, was properly brought to this court by appeal. Following the decision of that case, the motion to dismiss upon that ground is denied.

The respondent relied on this motion to dismiss the appeal upon the further ground that the notice of appeal was not properly served upon the clerk of the circuit court; but after a care-

ful examination of the affidavits read on the hearing, and the original records in this court, we are inclined to the opinion that the notice of appeal was properly served, and so hold.

The only question that we shall consider on this appeal is the one upon which the circuit court ruled, namely, that so much of the city ordinance as required the respondent to take out a permit, and pay the prescribed fee therefore, was void.

Section 100 of the ordinance reads as follows: "Building Permits.—Any person desiring to erect, alter or repair any building to be used exclusively not for business purposes, shall apply to said building inspector for a permit for such purpose and furnish him a written statement showing the location, dimensions and manner of construction of the proposed building, stating the material to be used, the manner of construction of chimneys and stove pipe connections, and exhibit to said inspector any plans or specifications of the same which he may have. If satisfied that such building, alteration or repair is in compliance with the provisions of this chapter, the building inspector shall give his permit for such proposed building or structure on payment of the fees prescribed in the next section." Section 101 of the ordinance prescribed the fee to be paid for such permit, being from $1 to $4 for buildings not exceeding in value $5,000, and 50 cents additional for each $1,000, above $5,000, with certain exceptions not necessary now to be noticed, and section 126 provides that a fine not less than $5 nor more than $100 may be imposed for a violation of the ordinance. The learned counsel for the respondent contends that the city council has no power under the act of 1890, providing for the incorporation of cities, to require the respondent to procure a building permit, and pay the prescribed fee therefor. He admits that, under the power conferred upon the city council by the statutes of this state, it has power to pass ordinances to prevent the construction of buildings having dangerous chimneys, ect., within the city limits, and to provide penalties for

the violation of such ordinances; but he contends that in this case there is no charge that respondent has erected any defective chimney or other appliance in violation of any ordinance, and that, therefore, no offense is charged. We are inclined to agree with counsel in his contention.

By chapter 37, art. 5, Laws 1890, it is provided that: "The city council shall have the following powers, * * * (50) To prescribe the limits within which wooden buildings shall not be erected or placed or repaired without permission, and to direct that all and any buildings within said limits (which shall be known as the fire limits), when the same shall have been damaged by fire, decay, or otherwise, to the extent of fifty per cent of the value shall be torn down or removed, and to prescribe the manner of ascertaining such damage. (51) To prevent dangerous construction and condition of chimneys, fire places, hearths, stoves, stove pipes, ovens, boilers, and apparatus used in and about any building and manufactory, and to cause the same to be moved or placed in a safe condition where considered dangerous; to regulate and prevent the carrying on of manufactories dangerous in causing and promoting fires; to prevent the deposit of ashes in unsafe places, and cause all such buildings and inclosures as may be in a dangerous state to be put in a safe condition."

Mr. Dillon, in his work on Municipal Corporations, defining the powers of such corporations, says; "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily and fairly implied, or incidental to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." 1 Dill. Mun. Corp. (4th Ed.) § 89, and cases there cited. And this is substantially the rule as laid down in Treadway v. Schnauber, 1 Dak. 236. 46 N. W. 464, by the late territorial supreme court. It will be observed that no power is expressly

granted to the city council to require of a party desiring to con-struct a building, or an addition to one existing, to procure a permit therefor, and that no express power is conferred upon the city council to require a fee to be paid for a permit. The city council, by the ordinance in controversy, it will be noticed, has not only assumed to require a permit to be procured for the erection of any building or structure within the city limits, and to require a fee to be paid therefor, but has provided that this permit can only be obtained from the inspector when he is sat-isfied that such building, alteration or repair is in compliance with the provisions" of that chapter. The ordinance is there-fore much broader and more comprehensive in its scope than the power conferred by the statute referred to, and cannot be justified, it seems to us, as a reasonable exercise of the author-ity conferred by the statute. The right of a person to use and improve his property as he may deem proper, consistent with law, is a constitutional right, of which he cannot be deprived at the mere will and pleasure of a city council, or of any officer appointed by it. While the city council may pass any ordin-ance that may be proper and necessary as to the manner of con-struction of buildings, chimneys and other fire apparatus so as to protect the residents of the city from the dangers of fire, and may prescribe such penalties for the violation of the same as are within the limits provided by statute, it cannot impose up-on the citizen unnecessary burdens, and in effect permit him to improve his property, or refuse to permit him so to do, as the building inspector may determine. Section 100 of the ordi-nance does not contain any regulations to guide the landowner in the construction or alteration of a building upon his land, but requires of such landowner, before any such building can be constructed or alteration made, that he must apply to the in-spector for a permit, which he is required to give when he is satisfied that such building or alteration is in compliance with the ordinance. It does not merely forbid the erection of any building that is hazardous, or which exposes property or per-

sons to danger from fire; but it requires of the landowner that he obtain a permit from the inspector, and pay the prescribed fee therefor, which may be granted or withheld by such inspector, as he may or may not be satisfied that the building complies with the requirements of the ordinance, which, as we have seen, makes no provisions as to what shall be deemed necessary to constitute a safe construction. It is clear that the ordinance in controversy, upon its face, attempts to restrict the right of dominion which every individual possesses over his property, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own property depend upon the arbritary will of the city inspector, and therefore makes the right of the citizen to use his property subject to the will of such inspector, from whose decision no appeal is given. Such an ordinance cannot be sustained. Its provisions are not necessarily or fairly implied from, or incidental to, the power granted the city council. Yick Yo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064; Newton v. Belger, 143 Mass. 598, 10 N. E. 464; State v. Tenant, 110 N. C. 609, 14 S. E. 387; State v. Webber, 107 N. C. 962, 12 S. E. 598; Bills v. City of Goshen, 117 Ind. 221, 20 N. E. 115; Anderson v. City of Wellington, 40 Kan. 173, 19 Pac. 719; May v. People, 27 Pac. 1010, 1 Colo. App. 157; Tugman v. Chicago. 78 Ill. 405. We cannot close the discussion of this section of the ordinance better than by quoting the vigorous language of Mr. Justice Matthews in the case first above cited. He says: "But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts bill of rights, the government of the commonwealth 'may be a government of laws and not of men,' for, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the en-

joyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

Section 101 of the ordinance is equally objectionable. While it does not in terms impose a tax upon the landowner who desires to improve his property, it in effect does so. The office of building inspector is created, and he is clothed with certain powers, not alone for the benefit of those who are about to erect buildings, but for the benefit of the citizens of the municipality generally; and to require a person, before he can be permitted to improve his property, to pay for a permit which is not required of the other residents, imposes a burden upon him not imposed upon the citizens generally. Such a burden cannot be imposed except by express authority. We know of no reason why a landowner should be required to pay a fee for the privilege of improving his property that might not be applied to the removal of a person from one part of the city to another, or to the renting or any other use of property. We are of the opinion that no such fee can be legally required, in the absence of an express legislative power authorizing its collection.

Our conclusions are that the circuit court ruled correctly, and properly instructed the jury to find a verdict for the respondent. The judgment of the circuit court is affirmed.

FULLER, J., concurring.

KELLAM, J. I dissent. The law of the opinion is abstractly correct, but I think it is misapplied to this case. No one at this day will question the power of the legislature to prohibit the erection of buildings constructed of wood or other inflammable material within the limits of a city. It is a police regulation often demanded by considerations of public safety. In such cases the convenience of the individual citizen must give way to the safety of the public. Nor can it be doubted that such power can be delegated to municipalities. They are

but subdivisions of the state, created by the state, and upon them the state confers a portion of its sovereignty to enable them to control their local affairs. Among the powers so generally conferred is the right to protect property from destruction by fire, by prohibiting the erection of combustible and dangerous buildings within the limits of such municipality, or within more circumscribed limits, to be designated by the governing body of such municipality. This is all plain enough, but the majority of the court is of the opinion that this particular ordinance is invalid because it subordinates the right of the individual landower to improve his property, by building thereon, to the arbitrary will of a building inspector, in that it requires the landowner, as a condition precedent to the erection of such building, to make a statement to such inspector of the character and location of the building he proposes to erect, the material to be used, and how the chimneys are to be constructed, and then that such inspector may refuse a permit for such building, and thus prevent its erection, unless he is satisfied that such building is to be constructed "in compliance with the provisions of this chapter." I think the mistake of the opinion is in considering the power thus conferred upon the inspector an arbitrary one. The language of this section plainly implies that this particular provision is supplementary to other sections of this "chapter," which prescribe general regulations concerning material to be used, and manner of construction, and with them the statement of the landowner as to his proposed building is to be compared, and, "if satisfied that such building is [will be] in compliance" with the requirements of such chapter, "the inspector shall give his permit for such proposed building, on payment of the fees prescribed in the next section." It cannot be contemplated that his decision will be arbitrary or willful or capricious. It is to be the exercise of a quasi judicial function by a sworn and bonded public officer. In this respect he is put upon the same footing as many other ministerial or executive officers who are required

to pass upon acts or instruments, and govern their conduct accordingly. Statutes have often forbidden the doing of acts otherwise lawful, such as selling intoxicating liquors, except when certain preliminary conditions exist or have been complied with, and have committed to local boards and officers the right and duty of granting or refusing permits or licenses therefor, according as they are or are not satisfied that such prescribed conditions exist, or have been conformed to by the applicant, but such laws have not been held invalid because under them such board or officer might captiously refuse to be satisfied. If the objection is good at all, it would be equally good as against the exercise of such power by the common council of the city, for the objection is to the nature of the power, and not to the character of the party exercising it. In the cases cited in the majority opinion the ordinances condemned contained no such element as appears in this. There were no general regulations applicable to all proposed builders, as to material or construction, to guide and control the inspector; but the power of determining whether or not a permit to build should be granted was left to the unqualified, unguided, and therefore arbitrary will of the council or inspector. In State v. Tenant, a North Carolina case, found in 14 S. E. 387, and cited in the opinion, the ordinance was this: "That no person, firm or corporation shall build or erect within the limits of the city, any house or building, of any kind or character, or otherwise add to, build upon or generally improve or change, any house or building, without having first applied to the alderman and obtained a permission for such purpose." The court, it seems to me, rightly held the ordinance void because "it prescribed no general rule for the exercise of discretion in granting permits," but allowed the granting of a permit to one, and the refusal to another, under precisely the same conditions, with no reason therefor but the irresponsible and arbitrary will of a majority of the aldermen. In City of Newton v. Belger, 143 Mass. 598, 10 N. E. 464, the ordinance was

as follows: ''No person shall erect, alter or rebuild, or essentially change any building or any part thereof, for any purpose other than a dwelling-house, without first obtaining in writing a permit from the board of aldermen. The application for such permit shall specify the location and size of the building, the material of which it is to be constructed and the use for which it is intended." This ordinance was held void on the same ground stated in the North Carolina case, the court remarking, ''Under the ordinance they may refuse a permit because, in their opinion, it is desirable that certain parts of the city shall be used only for handsome dwelling houses. These cases are representative of their class, but I discover nothing in them that requires the condemnation of an ordinance that first prescribes general and uniform rules regulating the kind of buildings that may and may not be erected, and then merely intrusts to an officer qualified by an oath and bond the duty of issuing permits to all who satisfy him that their proposed buildings will comply with the prescribed conditions. To me the ordinance does not seem obnoxious to the objection urged against it.

I also dissent from the second proposition of the opinion, which denies the right of the city to require the payment of a fee upon the issuance of a permit. While the specific power to demand such fee may not be found, in express terms, in the law under which the city is organized, I think it is there by intendment. The legislature having conferred upon the city, as a part of its police functions, the power of prescribing the kind and character of buildings that may be erected within its limits, as a prudential safeguard against the general destruction of property by fire, and the common council having, as a means of executing such general power provided by an ordinance regulating the matter of the construction of buildings, that the building inspector should issue a permit whenever, upon examination, it appeared that the conditions of such ordinance were complied with, it does not seem to me beyond the power of the city, as contemplated and intended by the legislature, to exact

a reasonable fee upon the issuing of such 'permit. Such fee is not intended, nor should it be considered or treated, as a tax. It is simply an expense incurred at the instance of the proposed builder, in a manner and for a purpose authorized, as I think, by the statute and the city ordinance,—an expense incurred in obtaining his permit to build, the reasonable cost of which may properly be charged to the person procuring it, as in many other cases in the exercise of its police power the municipality requires the payment of a fee by a party securing a permit or license. This question, in the precise phase in which it is here presented, was discussed and decided in Welch v. Hotchkiss, 39 Conn. 140. The reasoning and conclusion of that court commends itself to my judgment, and is adverse to the views of this court. There may be grounds upon which this judgment ought to be affirmed. I merely dissent, in justice to my own views, from the opinion of the court affirming upon the grounds stated.