This action was brought to recover certain expenses incurred and paid by the county of Vance in executing the provisions of law in regard to quarantine during an outbreak of smallpox in said county, (116) and in the town of Henderson, which is in the said county, in the years 1911 and 1912. The complaint is lengthy, and necessarily so, but we need not set out even the substance of all the allegations in order to show clearly the matter involved in the appeal. Defendant demurred, and as the complaint is thereby admitted for the purpose of deciding the question of law presented in the case, it may be briefly stated, as appears *Page 94 
therefrom, that the county, between 1 June, 1911, and 1 October, 1912, removed to its pesthouse outside the corporate limits of Henderson, and cared for, a number of smallpox patients from the town, and also had under its care in the town, at the same time, other patients, who were treated at their homes in Henderson under the county quarantine, the total number of patients being sixty-two. The county paid out for the care and cure of these patients the sum of $1,814.12, and made a proper demand for the same, but payment was refused by the defendant. What is actually due would, of course, have to be ascertained by a jury, or otherwise, if the defendant is liable at all. The county had a quarantine officer, but the city of Henderson had none at the time stated. The court overruled the demurrer, and defendant appealed.
after stating the case: Our opinion is that the city of Henderson is not liable for the amount paid by the county of Vance, on account of the maintenance and care of the persons afflicted with smallpox, while they were quarantined, nor for any part of it. The plaintiff's claim is based upon the provisions of Revisal, sec. 4508, and this, with the statute cited by defendant, Laws 1911, ch. 62, sec. 2 (ratified 7 March, 1911), will be discussed presently.
The counties, cities, and towns of the State have only such powers and capacities as have been conferred upon them by law. Dillon on Mun. Corporations (5 Ed.), sec. 59; Fidelity Co. v. Fleming, 132 N.C. 337; S. v. Webber, 107 N.C. 962; Harrington v. Greenville, 159 N.C. (117) 634. "It has been too often decided to be now questioned that the liability of towns to support poor persons is founded upon and limited by statute, and is not to be enlarged or modified by any supposed moral obligation." Smith v. Coleraine, 9 Met., 492. In an action to recover the expenses of caring for a smallpox patient, JusticeHoke, for this Court, said: "So far as municipal obligation is concerned, it is accepted doctrine that the care and support of the indigent and infirm is a matter of statutory provision." Copple v. Commissioners,138 N.C. 131. But it is unnecessary to pursue this line of thought any further, as the plaintiff bases his right to recover upon the statute.
The Legislature, some years ago, provided an entire scheme for the preservation of the public health in the proper exercise of its police power, and especially for quarantining and caring for persons afflicted with smallpox and other contagious and infectious diseases. This statute will be found in Revisal of 1905, vol. 2, ch. 95. In section 4508 of that chapter it is enacted that "the expense of the quarantine and of the *Page 95 
disinfection shall be borne by the householder in whose family the case occurs, if able; otherwise, by the city, town, or county of which he is a resident."
There was a superintendent of health for Vance County, who was also quarantine officer of the county, duly appointed according to law, and there was a superintendent of health for the town of Henderson, but he had not been appointed quarantine officer.
By Laws 1911, ch. 62, the Legislature adopted a new scheme for the preservation of the public health, and especially for a system of quarantine by which persons are allowed to be isolated and treated, for the purpose of preventing the spread of contagious and other diseases, and it concludes with this section: "All laws and clauses of laws in conflict with this act are hereby repealed." It is provided by section 15 of the act as follows: "The duties of the municipal health officer, within the jurisdiction of the town or city for which he is elected, shall be identical with those of the county superintendent of health for the county, with the exception of the duties of the county superintendent of health pertaining to the jail, convict camp, and county home. The (118) authorities of any city or town shall have the power to assign the duties of quarantine officer to the municipal health officer, and in such cases the municipal health officer shall faithfully perform the duties of the quarantine officer as prescribed in sections 20 and 21 of this act." And in section 21 there is this provision: "all expenses of quarantine and disinfection shall be borne by the town or county employing a quarantine officer."
We conclude from a perusal of the two statutes, Revisal, ch. 65, sec. 4508, and Laws 1911, ch. 62, sec. 21, that if the former statute ever imposed any liability upon a city without a quarantine officer, the Legislature intended to establish a new rule of liability by the latter section for the expenses of quarantining diseased persons, and to require that they shall be paid by the county which has a quarantine officer, unless the town in that county, where the expenses are incurred, has appointed a quarantine officer and undertaken for itself, by a system of quarantine, to isolate or segregate persons having contagious and other diseases, which are mentioned in the act, within its corporate limits, or, if possible, to take charge and supervision of the patients at their respective homes; but if it should elect, as in this case, not to exercise its power of appointing a quarantine officer for said purpose, it is the duty of the county to perform this service, the expenses thereof to be paid by the county which has a quarantine officer. In other words, the town is entitled, under the provisions of the new act, to the same rights in respect to quarantine, and the prevention of the spread of diseases, as any other part of the county, if it has not assumed to act for itself in the matter *Page 96 
of the appointment of a quarantine officer. This, no doubt, was deemed by the Legislature more just than the former provision, if the true construction of the latter be that it imposed the burden of paying quarantine expenses upon the town, whether it had its own quarantine system or not. It may have occurred to the legislative mind that there was no reason why the town should pay the expenses of its own indigent residents, when it was required by law to contribute its full proportion (119) to the taxes of the county, and should, therefore, be entitled to its proper share in the benefits of the county quarantine without any additional charge.
Where the language of a statute is free from ambiguity and conveys a definite and sensible meaning, the courts should no hesitate to give it a literal interpretation merely because they may question the wisdom or expediency of the enactment. In such a case, these are not pertinent inquires for the judicial tribunal. If there be any unwisdom or injustice in the law, it is for the Legislature to remedy it. For the courts, the only rule is ita lex scripta est. If, though, the statute is ambiguous, so as to be fairly susceptible of more than one interpretation, then the courts may rightfully exercise the power of construing its language, so as to give effect to the intention of the Legislature, as the same shall be ascertained and determined from relevant and admissible considerations. But it should be understood that the intention of the lawmaking power is to be ascertained by a reasonable construction of the act, and not one founded on mere arbitrary conjecture. And it is always the actual meaning of the Legislature which must be sought out and followed, and not the judge's own idea as to what the law should be. Finally, although every law must be construed according to the intention of the makers, as evidenced by the language employed to express it, that intention is never resorted to for any other purpose than to ascertain what, in fact, was meant to be done, and not for the purpose of ascertaining what they have done, with the view of determining whether it is politic or expedient, for with that we have nothing to do. We have reached the limit of our jurisdiction when we have certainly found and declared the meaning, as the object is to ascertain what the Legislature intended to enact, and not what is the legal consequence and effect of what they did enact. Black's Interpretation of Laws, pp. 38 and 41.
We think the purpose of this statute is clear and free from uncertainty, but if it is doubtful, the application of the well-settled rule of construction just stated leads us to think that it was not intended (120) to charge the town with the expenses of the quarantine service, unless it has adopted a system of its own, in which latter case it appears reasonable and just that it should be so charged. We are also of the opinion that the provision in section 21 of Laws 1911, ch. 62, *Page 97 
for paying the expenses of the quarantine is incompatible with the like provision in section 4805 of the Revisal, if the latter imposes a liability for the same upon the town in which there is no quarantine officer, for the act of 1911 explicitly provides that the expenses shall be paid "by the town or county employing a quarantine officer," and the town of Henderson has not employed one, though the county has. Where two statutes are thus in conflict and cannot reasonably be reconciled, the later one repeals the one of earlier date to the extent of the repugnance.S. v. Perkins, 141 N.C. 797. We believe that our view of the law in this case accords with the clear intent of the Legislature, and responds also to the dictates of justice and right. There is no good reason why the town or city should be charged with the double burden of paying its full lawful share of the county taxes and also the expenses of quarantine within its limits, from which it receives no more benefit or advantage than other sections of the county. But if it is not satisfied with the county system of quarantine or for any other reason it establishes one of its own, and thus chooses to regulate its own affairs in this respect, it is proper that it should bear the expense, and not the county. It is not just that the county should pay the expenses of the city quarantine when it can have no part in fixing or controlling the amount to be incurred, or in adopting regulations or methods for the economical administration of the law, and the same rule applies with equal force to the city, when entire control is in the hands of the county authorities. Taxation without representation often leads to the exercise of arbitrary and even despotic power, and is not tolerated or permitted in our system of government. He who pays the taxes should have some voice, directly or indirectly, in deciding how they should be laid and how and for what purposes they should be expended. The Legislature evidently did not intend that the county should place this burden upon the city, as a separate corporation, without its consent, or its participation in the exercise of the power by which it was created or imposed. In (121) respect to this matter, the county and the city must be treated, under the statute, as distinct bodies, each exercising its own powers of taxation, within its prescribed sphere, and each liable for its own expenses. When the city does not elect to act for itself by appointing a quarantine officer, it must be regarded as a part of the county, and is entitled to its hare of benefits as such in return for its contribution to the county revenue; it is otherwise, though, when it undertakes to exercise sole authority with respect to quarantine within its corporate limits by virtue of the powers given in the act of 1911. These reasons, of course, have influence with us only when there is ambiguity in the statute, but we think it clear that the later provision in the act of 1911 was intended to take the place of the earlier one in the Revisal, and to repeal the latter. *Page 98 
But we are also of the opinion that Revisal, sec. 4508, will not bear the construction upon which the plaintiff relies. It will be seen that by section 4509 the city health officer is also quarantine officer of the city, just as the county health officer is quarantine officer of the county. This throws a flood of light upon the language of section 4508, and clearly reveals its true meaning to be that when the householder is indigent and unable to pay the expenses of patients in his family, they shall be borne by the city, if he resides therein, and if not, by the county; but the city is not liable to the county for the expenses of its patients any more than the county is to the city for the expenses of its patients. Each provides for its own patients and pays their expenses, but not to the other. It could not mean that one of them can officiously pay the expenses of the other and recover them from the latter. Neither one of them is charged with the duty of attending to the affairs of the other in this respect, but each must provide for and pay its own expenses in such cases. But, as we have said, this is all changed by the act of 1911, and the town is not liable if it has not employed a quarantine officer. The general subject is discussed in McNorton v. Val Verde County, 25 S.W. (Tex.), 653, which presented somewhat an analogous case, and the Court reached the same conclusion as we do now. If the city of (122) Henderson was not liable and the county, therefore, paid the expenses officiously, it cannot recover them of the city. This we decided in Copple v. Commissioners, 138 N.C. 131.
It seems that section 21, chapter 62, Laws 1911, has been repealed by Laws 1913, ch. 181, sec. 9. This matter was not called to our attention, and we suppose the learned counsel attached no importance to it, as the county paid the expenses for which it now sues in 1911 and 1912, before the passage of the act of 1913, which should be given prospective operation. We merely refer to it to show that we had not overlooked the repealing act.
It follows that, in any view, the court erred in overruling the demurrer. It should have been sustained and the action dismissed. This result makes it unnecessary to consider more particularly the question raised on the argument as to whether the payment by the county of the quarantine expenses incurred in Henderson was officious, nor need we refer to the other matters discussed by counsel.
Reversed. *Page 99